William E. ALFORD, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 18S00–9707–CR–391.

Supreme Court of Indiana.

Aug. 19, 1998.

Kelly N. Bryan, Muncie, for Appellant.

Jeffrey A. Modisett, Attorney General, Randi E. Froug, Deputy Attorney General, Indianapolis, for Appellee.

BOEHM, Justice.

In this direct appeal from a murder conviction William E. Alford contends that it was ·reversible error: (1) to admit a videotaped statement obtained by police in violation of the Fifth Amendment to the United States Constitution; and (2) to reject his tendered lesser included offense instructions for reckless homicide and theft. We affirm the trial court.

## Factual Background

In June 1996 the body of Gary Buffin was found lying face down on the floor of his home in Delaware County. He had been shot thirteen times in the back of the head at close range. After learning of Buffin's death, Alford's brother Robert told police that Alford had confessed the shooting to him. Robert's account, as he first gave it to investigating police and then testified at trial, follows. The day before the killing Robert dropped Alford off in Muncie to meet Buffin for a night of drinking. Alford requested that Robert pick him up at Buffin's house the next day. When Robert arrived, through a window he saw Buffin lying face down on the floor. Because he had frequently seen Buffin passed out from the effects of alcohol this did not seem unusual. Alford answered the door and asked his brother to come back in about ten minutes. When Robert returned, Alford emerged carrying several guns and a brown paper sack that he placed in the trunk of the car. On the drive back, Alford told Robert that Buffin had pointed a shotgun at his chest, the two had argued for a few minutes, and Buffin had asked Alford if he felt like dying. Alford said he turned away, claiming he had to go to the bathroom, returned with a rifle, and shot Buffin repeatedly in the back of the head as Buffin lay face down on the floor. When Robert and Alford arrived at Alford's house after Alford had given this account, Alford asked Robert to take him to buy cigarettes. On the way, Alford directed Robert to stop the car at the

side of a creek where Alford disposed of the weapons and the bag he had taken from Buffin's house. Robert told police he initially did not believe Alford's story but later offered this account when he learned that Buffin had been shot in the back of the head. After Alford's arrest, Robert told police in a second statement that Alford told him that as he was shooting Buffin he thought to himself "dead men tell no tales."

Based on their initial interview with Robert, police arrested Alford. In a videotaped statement Alford confessed to shooting Buffin but claimed that he acted in self defense. Alford said that the two had been drinking much of the day and that Buffin started an argument over Alford's sister, who was Buffin's ex-wife. Buffin pointed a shotgun at Alford and threatened his life. Alford became frightened, pushed Buffin away, ran to the kitchen, saw a rifle, and returned to the living room where he found Buffin face down on the floor. Buffin yelled "Bill" in a "hateful" voice and Alford said he shot once. Buffin moved to get up, and Alford continued to fire. Shortly thereafter Robert arrived to pick Alford up. Alford also corroborated Robert's account of disposing of the weapons.

At trial, the videotape was played to the jury. Alford did not testify but relied on the tape to present his theory of self defense. He did not contest that he was the shooter. A pathologist who performed the autopsy testified that there were thirteen entry wounds in close proximity to each other on the back of Buffin's head, and two exit wounds. He said that most of the wounds were "contact" wounds—fired within two inches of Buffin's head. The jury convicted Alford on counts of murder and felony murder. The trial court merged the felony murder conviction into the murder conviction and sentenced Alford to sixty years imprisonment.

## I. Admissibility of Statement

 Alford contends that his statement was obtained in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and its progeny.[1] He contends

---

1. Although Alford states that his statement was obtained in violation of Article I, § 13 of the

Indiana Constitution he provides no authority or argument to support this claim. Accordingly,

that after his arrest and waiver of Miranda rights, and before he gave the statement, he asserted his Fifth Amendment right to counsel but that the police did not end the interrogation. When a suspect asserts the right to counsel during custodial questioning, the police must stop the interrogation until counsel is present or the suspect reinitiates communication with police and waives the right to counsel. *Minnick v. Mississippi*, 498 U.S. 146, 150, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990); *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Jolley v. State*, 684 N.E.2d 491, 492 (Ind.1997). Accordingly, Alford maintains that his statement should have been excluded.

■ Alford challenged the admissibility of the statement at a hearing on his motion to suppress and renewed his objection when the statement was offered into evidence. Accordingly, he has preserved the issue for appeal. We review a ruling on a motion to suppress for substantial evidence of probative value to support the trial court. *Peterson v. State*, 674 N.E.2d 528, 536 (Ind.1996), *reh'g denied, cert. denied,* —— U.S. ——, 118 S.Ct. 858, 139 L.Ed.2d 757 (1998). We do not reweigh the evidence but consider all substantial uncontradicted evidence and the conflicting evidence that supports the trial court's decision. *Jolley*, 684 N.E.2d at 493.

■ At the hearing on the motion to suppress, interrogating officer Brad Sorrell testified that Alford was arrested at his home and brought to the "Investigator's Office" in the police station where he was read his Miranda rights and signed a rights waiver form. Sorrell asked him "if he wanted to talk to me about the incident or why he was there, he hesitated and said at that point in time, [']I think it would be in my best interest to talk to an attorney[']." Sorrell acknowledged that Alford had that right, but did not cease the interrogation. Instead Sorrell testified he "wanted to explain to [Alford] the facts of the case" and told him that the police had recovered the guns and Buffin's driver's license at the creek, that they were holding his tennis shoes as evidence, and that

they knew that Buffin had pointed a shotgun at Alford's chest. Alford interrupted Sorrell's recitation and confessed to shooting Buffin, but maintained that it was in self defense. Sorrell then turned on a video camera and asked Alford to repeat his story on videotape resulting in the detailed statement that was later played to the jury. We agree with Alford that Sorrell's continued interrogation of him was in blatant disregard of his Fifth Amendment right to counsel. It is firmly settled that the federal constitution requires that once a suspect requests an attorney, the interrogation must cease. *Minnick*, 498 U.S. at 150, 111 S.Ct. 486; *Edwards*, 451 U.S. at 484–85, 101 S.Ct. 1880; *Miranda*, 384 U.S. at 474, 86 S.Ct. 1602.

■ The State contended at the motion to suppress hearing that Sorrell's monologue did not constitute "interrogation" for purposes of Miranda because no questions were asked. The trial court agreed. However, the standard for whether police "interrogate" a suspect is not whether questions are asked but whether the police should know that their words or actions are "reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (footnote omitted). Sorrell's monologue about the discovery of potentially incriminating evidence had no apparent purpose other than to induce Alford to say something inculpatory. *Cf. Loving v. State*, 647 N.E.2d 1123, 1126 (Ind.1995) (police officer's comment upon the inconsistency between the defendant's account and the physical evidence amounted to interrogation). Confronting Alford in an interrogation room with potentially incriminating evidence was "interrogation" for purposes of *Miranda* and *Innis*. Accordingly, the trial court was incorrect in admitting the confession on the ground that Sorrell did not interrogate Alford.

■ Although the trial court's reason for admitting the confession was erroneous, we will affirm the judgment of the trial court if it is sustainable on any legal grounds apparent in the record. *Ross v. State*, 676

the state constitutional claim is waived. *Allen v.* *State*, 686 N.E.2d 760, 769 n. 3 (Ind.1997).

N.E.2d 339, 345 (Ind.1996); *Benham v. State,* 637 N.E.2d 133, 138 (Ind.1994). The State contends that the confession was properly admitted because Alford's request for counsel was not clear and unequivocal as required by *Davis v. United States,* 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). *Davis* holds that "[i]nvocation of the Miranda right to counsel 'requires at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.'" *Id.* at 459, 114 S.Ct. 2350 (quoting *McNeil v. Wisconsin,* 501 U.S. 171, 178, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991)). The request for counsel must be made with sufficient clarity such that a "reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.; see also Taylor v. State,* 689 N.E.2d 699, 703 (Ind.1997). Under *Davis,* Alford's statement that "I think it would be in my best interest to talk to an attorney" was an unequivocal request for counsel. The statement was not qualified by expressions of doubt, such as "[m]aybe I should talk to a lawyer," *Davis,* 512 U.S. at 462, 114 S.Ct. 2350, or "I guess I really want a lawyer, but ... I don't know," *Taylor,* 689 N.E.2d at 703. Rather, it was an affirmative declaration of Alford's desire to secure his "best interests." Moreover, it is evident that the two police officers who heard the request understood it to be a request for counsel. After Alford made the statement, Sorrell acknowledged to Alford that "that's fine, that's [your] right." A second officer, Steve Craycraft, testified at the hearing that after the request he left the room and told the Sheriff and another officer that Alford had "mentioned that he wanted an attorney." In short, no ambiguity was present and none was understood by the interrogating officers.

## II. Harmless Error

▮▮▮▮ Statements obtained in violation of *Miranda* and erroneously admitted are subject to harmless error analysis. *Houser v. State,* 678 N.E.2d 95, 102 n. 8 (Ind.1997) (citing *Sleek v. State,* 499 N.E.2d 751, 755 (Ind.1986)). A federal constitutional error is reviewed de novo and must be "harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). A reviewing court must be satisfied that the State has "met its burden of demonstrating that the admission of the confession ... did not contribute to [the] conviction." *Arizona v. Fulminante,* 499 U.S. 279, 296, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). "To say that an error did not contribute to the verdict is ... to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." *Yates v. Evatt,* 500 U.S. 391, 403, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991), *disapproved on other grounds by Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Even under this demanding standard, we conclude that the admission of Alford's statement was harmless error.

▮▮▮▮ Alford's sole contention at trial was that he killed Buffin in self defense, not that he did not kill Buffin. Thus there are only three issues: did Alford shoot Buffin, if so was it with the requisite mens rea, and was it in self defense? The first was not contested. Accordingly, the harm from the statement, if any, must be to his theory of self defense or the requisite mental element.[2] To the extent the statement bore on either, it was plainly harmless. The physical evidence conclusively showed at least a knowing killing and clearly rebutted any claim of self defense. Alford's statement did not rebut or confirm the State's evidence that several of

**2.** Possibly the erroneous admission of the confession led to the concession that Alford killed Buffin. If the trial court had ruled correctly, perhaps the State would have been forced to present a stronger case to prove that Alford was the triggerman. However, we review for harmless error based only on the record before us and not on the basis of what might have happened had the erroneous evidence not been admitted. *Cf. Coy v. Iowa,* 487 U.S. 1012, 1021–22, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988) (in harmless error review for confrontation clause violation, "[a]n assessment of harmlessness cannot include consideration of whether the witness's testimony would have been unchanged, or the jury's assessment unaltered, had there been confrontation; such an inquiry would obviously involve pure speculation, and harmlessness must therefore be determined on the basis of the remaining evidence."). The remedy for the error is appeal. It does not create a presumption as to what might have been.

the thirteen bullet holes were fired within two inches of the target, that the bullet casings found near the body lay in a pattern consistent with firing close to the body, and the location and number of the wounds (in close proximity to each other in the back of Buffin's head). As such, the admission of the statement was harmless error as to the self defense claim.

### III. Jury Instructions

■ Alford contends that the trial court erred in rejecting his tendered lesser included offense instruction of reckless homicide. When asked to instruct the jury on a lesser included offense, trial courts are to apply the three part test set out in *Wright v. State*, 658 N.E.2d 563, 566–67 (Ind.1995). Parts one and two require the trial court to determine whether the lesser included offense is either factually or inherently part of the greater offense. If so, *Wright* requires the trial court to determine if there is a "serious evidentiary dispute" as to any element that distinguishes the greater offense from the lesser. "[I]f, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater, then it is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense." *Id.* at 567. Here, the trial court found that there was no evidence of recklessness to support the requested instruction. We review this finding for an abuse of discretion. *Champlain v. State*, 681 N.E.2d 696, 700 (Ind.1997).

■ Reckless homicide is an inherently included lesser offense of murder. The element distinguishing it from murder is a "reckless" state of mind as compared to a "knowing or intentional" state of mind. *Compare* Ind.Code § 35–42–1–1 (1993) *with* Ind.Code § 35–42–1–5 (1993). "Reckless" conduct occurs when a person "engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." Ind. Code § 35–41–2–2(c) (1993). The trial court was well within its discretion in determining that evidence of thirteen bullets to the back

of Buffin's head showed knowing and not reckless conduct. This is evidence of at least a knowing act, and equates to far more than a "substantial deviation from acceptable standards of conduct." Based on this determination, refusal of the reckless homicide instruction was proper.

■ Alford also contends that it was error to reject his tendered instruction for theft as a lesser included offense of robbery—the felony underlying the felony murder charge. Because the trial court merged the felony murder conviction into the murder conviction any claim of error with respect to the felony murder charge is moot.

### Conclusion

We affirm the trial court.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.