**Jason Matthew LEHMAN,
Defendant–Appellant,**

v.

**STATE of Indiana, Plaintiff–Appellee.**

No. 82S00–9904–CR–268.

Supreme Court of Indiana.

June 28, 2000.

Bernard G. Reisz, Evansville, IN, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

DICKSON, Justice

The defendant-appellant, Jason Matthew Lehman, appeals his conviction for the 1998 murder[1] of Judith Ann Cain. Finding no error in the trial court's admission and use of the defendant's recorded statements or in its refusal to instruct on aggravated battery as a lesser-included offense, we affirm.

## Admission and Use of Recorded Statements

The defendant alleges error in the admission and use of his recorded statements about the crime.

Several weeks after the murder, after an evening of drinking, the defendant showed his friend, William Boles, III, the victim's body in a cornfield. The defendant told Boles that he had killed her during a sexual encounter and put her body in the cornfield. After seeing the body, Boles told others and, eventually, based upon Boles's stories, a volunteer firefighter found the body and notified the police. Shortly afterward, Boles was taken into police custody for questioning as a suspect in the murder. He denied involvement in the murder but told the police that the defendant had shown him the body and stated that he had killed the woman. Boles agreed to assist the police by taping his conversations with the defendant. During the recorded conversation, Boles discussed his apprehension that someone might have seen his car the night the defendant showed him the body, his recurring images of the partially skeletonized

1. IND.CODE § 35–42–1–1.

remains that were disturbing his sleep, and recent media reports of the discovery of the body. Throughout the tape, the defendant assured Boles that everything would be fine, that he had covered his tracks well, and that the police would never find out that he killed her. In response to some of Boles's questions, the defendant acknowledged that he broke the victim's neck, that he dumped her in a cornfield, and that he did not worry at all because he was "blessed with no conscience." Record at 172 (Ex. 11–A at 16). It is this conversation that the defendant claims was erroneously admitted.

■ The defendant argues that he was never warned or asked to sign a waiver before making the statements and that he did not know they would be used against him. However, the State is not required to warn a person not in custody that his voluntary comments may be used against him, even if the comments are made to a police informant. *See Scott v. State,* 510 N.E.2d 170, 173 (Ind.1987); *Lawhorn v. State,* 452 N.E.2d 915, 918 (Ind.1983); *Adams v. State,* 270 Ind. 406, 411, 386 N.E.2d 657, 661 (1979). The foundational requirements for admission of a taped recording made in a non-custodial setting are: (1) that the recording is authentic and correct, (2) that it does not contain evidence otherwise inadmissible, and (3) that it be of such clarity as to be intelligible and enlightening to the jury. *McCollum v. State,* 582 N.E.2d 804, 811–12 (Ind.1991). The trial court has wide discretion in determining whether these criteria have been met. *Id.* at 812. The defendant does not challenge admission based upon any of these elements. The trial court did not abuse its discretion in admitting the recordings of the defendant's non-custodial confession to his friend.

■ The defendant also contends that the trial court erred in allowing the jury to read copies of a printed transcript of the recorded conversation while the tape was played. The defendant argues that the transcript violates the best evidence rule,

was not authenticated, and was offered to arouse unfairly the jury's emotions because the jury could "see the printed words, while simultaneously hearing the graphic descriptions" of the events surrounding the murder. Brief of Defendant–Appellant at 10. At trial, however, the defendant did not object on any of these grounds. Rather, his objection was based upon "the rule prohibiting duplication of copies." Record at 169. When, as in this case, a defendant presents one argument at trial and a different argument on appeal, the claims are forfeited. *Marshall v. State,* 621 N.E.2d 308, 314 (Ind. 1993); *Chandler v. State,* 581 N.E.2d 1233, 1237 (Ind.1991).

We find no error in the admission and use of the defendant's recorded statements or the transcript.

## Refused Jury Instruction

■ The defendant claims the trial court erred in refusing to give his tendered jury instruction on aggravated battery. The defendant acknowledges that the trial court gave instructions on manslaughter, voluntary manslaughter, involuntary manslaughter, and reckless homicide, but claims an instruction on aggravated battery was also warranted.

[7, 8] When a defendant requests an instruction covering a lesser-included offense, a trial court applies the three-part analysis set forth in *Wright v. State,* 658 N.E.2d 563, 566–67 (Ind.1995). The first two parts require the trial court to determine whether the offense is either inherently or factually included in the charged offense. *Id.* If so, the trial court must determine whether there is a serious evidentiary dispute regarding any element that distinguishes the two offenses. *Id.* at 567. *See also Brown v. State,* 703 N.E.2d 1010, 1019 (Ind.1998). If, in light of such a dispute, " 'a jury could conclude that the lesser offense was committed but not the greater, then it is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually

lesser included offense.'" *Brown,* 703 N.E.2d at 1019 (quoting *Wright,* 658 N.E.2d at 567). Where, as here, a defendant does not direct the trial court's attention to a specific evidentiary dispute, we review the trial court's ruling for abuse of discretion. *Brown,* 703 N.E.2d at 1019–20.

■ The defendant was charged with murder by knowingly killing the victim. His appellate brief argues that aggravated battery is inherently included in the murder charge, but he does not identify or allege any serious evidentiary dispute from which the jury might have determined that aggravated battery was committed, but that a knowing killing was not. A person knowingly kills when he is aware of a high probability that he is engaged in killing. *Heavrin v. State,* 675 N.E.2d 1075, 1079 (Ind.1996). The offense of aggravated battery consists of the knowing or intentional infliction of injury on a person that creates a substantial risk of death or causes serious permanent disfigurement or protracted loss or impairment of the function of a bodily member or organ. IND.CODE § 35–42–2–1.5. Thus, an instruction on aggravated battery would not be warranted if there was no serious evidentiary dispute that the defendant was aware of a high probability that he was engaged in killing.

The evidence shows that the defendant paid the victim $50 for oral sex and that, during this activity, the victim bit the defendant. He grabbed her by the neck and administered a choke hold or a "sleeper hold" that he claimed he had learned either in the military or from watching professional wrestling, causing her to lose consciousness. Record at 319–20. According to the defendant, this hold is used to cut off the victim's airway. When the victim regained consciousness, she began to scream and tried to get out of the car. He administered the choke hold again to her throat, cutting off her airway, until she lost consciousness again. At least one more time, she awoke and tried to call for help and get out of the car. Finally, the defendant choked the victim and then punched the front of her neck, breaking her neck. The defendant then told his cousin, who was in the car during the encounter, that he thought he had killed her. The defendant and his cousin retrieved the $50 from the victim's pocket, hid her body in a cornfield, and disposed of part of her clothing.

At some point after the victim's death, the defendant told his friend, William Boles, that he snapped the victim's neck. Record at 172 (Ex. 11–A at 16), 309–10. In his statement to police and in his testimony at trial, the defendant said he choked the victim. Record at 68, 75. The defendant testified at trial that he intended only to cause the victim to lose consciousness and claimed that he did not know the sleeper hold could kill the victim, but thought it would only cause unconsciousness. But he also stated that he could understand killing someone "if you choked them or if, you know, ... did the twist or whatever to them, but a sleeper hold is not going to kill [anybody]." Record at 320.

From this evidence, we conclude that the trial court did not abuse its discretion in concluding that there was no serious evidentiary dispute upon which the jury could have concluded that the defendant committed an aggravated battery but not a knowing killing. We find no error on this issue.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and SULLIVAN, BOEHM, and RUCKER, JJ., concur.