**Joseph L. MORGAN, III, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 71A04–0104–CR–164.**

Court of Appeals of Indiana.

Dec. 5, 2001.

---

Charles A. Walton, Jr., South Bend, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Adam M. Dulik, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATTINGLY–MAY, Judge.

Joseph L. Morgan appeals[1] his conviction of murder. He raises two issues on appeal, which we restate as:

1. Whether Morgan unambiguously invoked his right to counsel during a police interrogation when he told the officer he would "feel more comfortable with a lawyer" but subsequently indicated he had changed his mind and did not want an attorney; and

2. Whether the trial court erred when it declined to give Morgan's tendered jury instructions on voluntary manslaughter

---

1. We heard oral argument at South Bend on October 25, 2001. We gratefully acknowledge the hospitality of the Indiana State Bar Association and the capable advocacy of counsel.

and aggravated battery as lesser-included offenses of murder.

Morgan invoked his right to counsel and the trial court therefore erred in admitting statements Morgan made after police continued to question him. However, the error was harmless and we accordingly affirm. We further find Morgan's tendered instructions were not supported by the evidence and the failure to give the instructions was therefore not error.

## FACTS AND PROCEDURAL HISTORY

On April 26, 1999, Morgan shot and killed Merlyn Davis. About a month earlier, Alvin Brooks had reported to Morgan that Davis had walked into Brooks' home, hit him in the face with a gun, and fought with him. Morgan indicated to Brooks that he knew Davis. On the evening of April 26, Morgan encountered Davis and three other men, and later Morgan visited Brooks. Morgan was carrying a gun. He showed Brooks the gun and told Brooks he knew where Davis was. Morgan asked Brooks if he wanted to go with him. Brooks declined, and Morgan left. Approximately one-half hour later, Brooks heard a gunshot.

While Davis was standing in front of a nearby house with two other men, someone wearing a mask and black clothing walked toward Davis from behind and shot Davis from about five feet away. Morgan encountered Brooks later that evening, told Brooks not to say anything about the conversation they had had earlier, and told Brooks "it was done."

Morgan was arrested on May 6, 1999, and taken to the police station for questioning. Detective Bruce Villwock read Morgan his *Miranda* rights and Morgan signed a form indicating he understood them. Detective Villwock asked Morgan if he was willing to make a statement, and

Morgan replied "I feel more comfortable with a lawyer." (R. at 873.) The detective asked "So you don't want to talk to me at this time?" *id.,* and Morgan shook his head no.

The detective reminded Morgan that the police had evidence against him and that Morgan would be taken to jail and booked on the murder charge. He told Morgan how to contact him if Morgan wanted to "think about it and talk it over with a lawyer or somebody," *id.* at 874, and then decided to make a statement. He reminded Morgan that it was in Morgan's best interest to cooperate, and again asked Morgan "Are you willing to talk or do you still want a lawyer?" *Id.* Morgan nodded his head, and the detective left to get a waiver form. After the detective returned, the following exchange took place:

CORPORAL VILLWOCK: Joe, this is Commander Swanson. Now you wish to talk to me at this time; right?

MR. MORGAN: Yes.

CORPORAL VILLWOCK: And even though a minute ago you stated you wanted an attorney, right now you are stating you have changed your mind and don't want an attorney and want to give me a statement; is that correct?

MR. MORGAN: Right.

(R. at 875.) Morgan then signed a form indicating he had previously requested a lawyer but now waived that right. The statement that followed amounted to a confession by Morgan that he killed Davis.

At trial, Morgan testified that he and Davis had argued earlier in the day, and he thought Davis was, as a result, going to try to catch him somewhere and do something to him. Morgan testified he went to Brooks' house to tell Brooks he had seen Davis and to get a gun because he was afraid of Davis. Morgan testified that he and Brooks went to the alley behind the

house where Davis was standing and that Brooks loaded the gun and told Morgan to "do it." After Brooks continued to tell Morgan to "do it," Morgan pulled a mask over his face, walked toward Davis, and killed him. Morgan testified his "mind went blank" and he remembered only the first shot.

## DISCUSSION AND DECISION

### 1. *The Police Interview*

Review of the denial of a motion to suppress is similar to other sufficiency matters. The record must disclose substantial evidence of probative value that supports the trial court's decision. We do not reweigh the evidence and we consider conflicting evidence most favorably to the trial court's ruling. *Taylor v. State,* 689 N.E.2d 699, 702 (Ind.1997).

Taylor contended his *Miranda* rights were violated when police continued to question him after he said: "I don't know what to say. I guess I really want a lawyer, but, I mean, I've never done this before so I don't know." *Id.* At the beginning of the interrogation, Taylor had signed a written waiver of rights form and orally acknowledged that he had been advised of his rights and had agreed to waive them.

■ "Invocation of the *Miranda* right to counsel requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *Davis v. United States,* 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). The level of clarity required to meet the reasonableness standard is sufficient clarity that a "reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Taylor,* 689 N.E.2d at 703, *quoting Davis,* 512 U.S. at 459, 114 S.Ct. 2350. It is not enough that

the defendant might be invoking his rights; the request must be unambiguous. *Id.*

In *Davis,* the defendant's statement "maybe I should talk to a lawyer" was held not to be a request for counsel. 512 U.S. at 462, 114 S.Ct. 2350. Consequently, police officers had no duty to stop questioning Davis, and any statements he subsequently made were admissible. The *Taylor* court interpreted *Davis* as establishing as a matter of Fifth Amendment law that police have no duty to cease questioning when an equivocal request for counsel is made. Nor are they required to ask clarifying questions to determine whether the suspect actually wants a lawyer. 689 N.E.2d at 703.

Our supreme court characterized Taylor's statement of "I guess I really want a lawyer, but, I mean, I've never done this before so I don't know" as an expression of doubt, not a request. A reasonable police officer in the circumstances would not understand that Taylor was unambiguously asserting his right to have counsel present. *Id.*

■ Here, by contrast, it is apparent in light of the totality of the circumstances that even if Morgan's statement could, standing alone, be considered "equivocal," the officer who was questioning Morgan reasonably understood that Morgan was asserting his right to have counsel present. Still, the officer chose not to break off communication with Morgan.

After Morgan stated he would "feel more comfortable with a lawyer," Officer Villwock asked "So you don't want to talk to me at this time?" *id.,* and Morgan shook his head no. The officer continued his exchange with Morgan, however, explaining why it was in Morgan's best interest to talk to him. He then told Morgan how to contact him if he later decided to talk.

The officer then asked Morgan "Are you willing to talk or *do you still want a lawyer?*" (R. at 874) (emphasis supplied). After Officer Villwock left to get a waiver form and returned with Commander Swanson, he asked Morgan "And even though a minute ago *you stated you wanted an attorney*, right now you are stating you have changed your mind and don't want an attorney and want to give me a statement; is that correct?" *Id.* at 875 (emphasis supplied). While Morgan's words are subject to different interpretations,[2] we cannot in light of all the circumstances characterize this assertion of the right to counsel as "equivocal." Furthermore, unlike the officer in *Taylor,* Officer Villwock undoubtedly understood that Morgan was asserting his right to counsel. Thus, Morgan's confession was illegally obtained.

 Even though Morgan's confession should not have been entered into evidence, the trial court's error was harmless. Statements obtained in violation of *Miranda* and erroneously admitted are subject to harmless error analysis.[3] *Alford v. State*, 699 N.E.2d 247, 251 (Ind. 1998). Admission of a confession is harmless if it does not contribute to the conviction. *Id.* Alford's sole contention at his trial was that he killed the victim but did so in self-defense. Any error in admitting Alford's pretrial statement that he shot the victim was determined to be harmless because whether Alford shot the victim was not in dispute. *Id.*

At his trial, Morgan conceded in his opening statement that he shot Davis, and he later testified that he shot Davis. Morgan offered evidence at trial suggesting he acted in self-defense and under the influence of intoxicants, and the jury was instructed on those defenses. Therefore, as the State correctly notes, admission of Morgan's confession did not "undermine his theory of the case." (Br. of the Appellee at 20.) Because the improper admission of Morgan's confession did not contribute to his conviction, the error was harmless.

Further, Morgan's conviction was supported by ample evidence in addition to his own testimony. Brooks testified that Morgan came to his house, showed him a loaded gun, told Brooks he knew where Davis was, and asked Brooks to accompany him. Later that evening, Brooks testified, Morgan told Brooks "it was done." Police found a handgun magazine near the scene and determined a fingerprint on it was Morgan's. Police found a gun Morgan had

**2.** The State argues Morgan's statement was not an unambiguous assertion of his right to counsel because his "statement regarding his comfort level" (Br. of the Appellee at 14) was not a statement that he did not want to proceed without counsel present. Nor, the State argues, was Morgan's shaking of his head after he was asked "So you don't want to talk to me at this time" an invocation of his right to counsel. Rather, Morgan was merely demonstrating he did not want to talk to the detective. We acknowledge the State's alternative interpretations of what Morgan's statement, viewed in isolation, might have conveyed. However, it is apparent in light of the circumstances surrounding the statement that the officer interviewing Morgan interpreted the statement only as an invocation of the right to counsel, and we cannot say the officer was unreasonable in so interpreting the statement.

**3.** Morgan argues that errors such as the one in the case before us are "fundamental," and therefore reversible *per se* even if there is other independent evidence sufficient to support a conviction, citing *Propes v. State*, 550 N.E.2d 755, 758 (Ind.1990). Morgan correctly characterizes the *Propes* holding; however, in light of our supreme court's subsequent holding in *Alford v. State*, 699 N.E.2d 247, 251 (Ind.1998), we are constrained to apply the harmless error analysis. *See also Rawley v. State*, 724 N.E.2d 1087, 1090 (Ind.2000).

hidden in a former girlfriend's house, and they determined that gun had fired the shell casings found at the murder scene. The admission of the confession was unimportant in relation to everything else the jury considered.

## 2. *The Jury Instructions*

■ Morgan asserts error in the trial court's refusal to give his tendered instructions on aggravated battery and voluntary manslaughter as lesser-included offenses of his murder charge. The manner of instructing a jury lies largely within the discretion of the trial court, and we will reverse only for abuse of discretion. *Mayes v. State,* 744 N.E.2d 390, 394 (Ind. 2001). When determining whether a trial court erroneously gave or refused to give a tendered instruction, we consider (1) whether the tendered instruction correctly states the law; (2) whether there was evidence presented at trial to support giving the instruction; and (3) whether the substance of the instruction was covered by other instructions that were given. *Id.* The instructions Morgan tendered appear to correctly state the law, and the record does not indicate the instruction was covered by other instructions. However, the evidence presented at trial did not support giving the instructions.

■ We apply a three-part test for determining when a trial court should instruct on a lesser-included offense. First, the trial court must determine whether the lesser offense is inherently included in the offense charged by comparing the statute defining the crime charged with the statute defining the alleged lesser-included offense. *Evans v. State,* 727 N.E.2d 1072, 1080 (Ind.2000). If necessary, part two of the test alternatively requires the trial

court to determine whether the lesser offense is factually included in the offense charged by comparing the charging instrument with the statute defining the alleged lesser-included offense. *Id.*

■ If the court concludes that the lesser offense is either inherently or factually included in the offense charged, then part three requires the court to determine whether a serious evidentiary dispute exists as to which offense was committed by the defendant, given all the evidence presented by both parties. *Id.* If a serious evidentiary dispute exists, it is reversible error not to give the instruction on the inherently or factually included lesser offense. *Id.* The test for whether there is evidence before the jury that the included offense was committed hinges on whether a serious evidentiary dispute exists with respect to the element that distinguishes the greater and lesser offenses. The evidence must be such that the jury could conclude that the lesser offense was committed and the greater offense was not. *Id.*

■ The offense of aggravated battery consists of the knowing or intentional infliction of injury on a person, which injury creates a substantial risk of death or causes serious permanent disfigurement or protracted loss or impairment of the function of a bodily member or organ. Ind. Code § 35–42–2–1.5. Our supreme court has held an aggravated battery instruction is not warranted in a murder case if there is no serious evidentiary dispute that the defendant "knowingly" killed—*i.e.,* that he was aware of a high probability that he was engaged in killing. *Lehman v. State,* 730 N.E.2d 701, 704 (Ind.2000).[4] Morgan does not dispute the evidence that he

4. *Lehman* did not address whether aggravated battery is an inherently lesser-included offense of murder.

donned a mask, approached Davis from behind, walked up to him, and shot him. We accordingly decline to find a serious evidentiary dispute that Morgan knowingly killed Davis.

■■■■■ Voluntary manslaughter is defined as follows: "A person who knowingly or intentionally ... kills another human being ... while acting under sudden heat commits voluntary manslaughter, a Class B felony." Ind.Code § 35–42–1–3(a). Voluntary manslaughter is an inherently lesser-included offense of murder, and sudden heat is a mitigating factor that reduces murderous activity from murder to voluntary manslaughter. *Horan v. State*, 682 N.E.2d 502, 507 (Ind.1997). A trial court should grant a requested voluntary manslaughter instruction if the evidence demonstrates a serious evidentiary dispute regarding the mitigating factor of "sudden heat." *Id.*

■■■ Morgan directs us to no such specific evidentiary dispute. Sudden heat occurs where "provocation engenders rage, resentment, or terror sufficient to obscure the reason of an ordinary person, preventing deliberation and premeditation, excluding malice, and rendering a person incapable of cool reflection." *Ingle v. State*, 746 N.E.2d 927, 931 (Ind.2001). Morgan was angry about a dispute with Davis over a month earlier, and he had discussed the matter with Brooks earlier on the day of the shooting. Morgan testified that he and Brooks went to the house where Davis was standing and that he and Brooks discussed which of the two would shoot Davis. This evidence does not support an inference that Morgan acted in rage, anger, sudden resentment, or terror.

## CONCLUSION

The trial court properly declined to give the instructions Morgan tendered because they were not supported by the evidence, but it erred in admitting Morgan's statement to police because the officer continued to communicate with Morgan after Morgan made a statement the officer reasonably interpreted as a request for counsel. However, the error was harmless in light of the other evidence presented at trial, and we accordingly affirm.

BROOK, J., and BARNES, J., concur.

BARNES, Judge, concurring.

I write to fully concur in Judge Mattingly May's analysis and to emphasize that the conduct of police in situations such as these receives, as it should, our highest level of scrutiny.

Investigating and solving a homicide case is a difficult and challenging task for law enforcement. The job is tedious, tiring, and often frustrating. However, one of the bedrock principles of our criminal justice jurisprudence is that when a suspect asks police for an attorney to advise him—his questioning/interrogation ceases. No ifs, ands, or buts.

In this case, the dialogue between the detective investigating the crime and Morgan was clear, distinct and unmistakable. "I feel more comfortable with a lawyer" is not a phrase subject to interpretation. Like Horton the Elephant of children's books, that phrase means what it says and says what it means.

Because there was other overwhelming evidence of guilt here, this conviction is affirmed. Absent such evidence, I would not have reached this conclusion.