## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**ATTORNEY FOR APPELLANT**

Marielena Duerring
South Bend, Indiana

**ATTORNEYS FOR APPELLEE**

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Deshawn C. Howard, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | June 22, 2017 <br><br> Court of Appeals Case No. <br> 20A05-1609-CR-2064 <br><br> Appeal from the Elkhart Superior Court <br><br> The Honorable Teresa L. Cataldo, Judge <br><br> Trial Court Cause No. <br> 20D03-1501-FA-6 |

**Altice, Judge.**

**Case Summary**

[1] Following a jury trial, Deshawn Howard was convicted of two counts of Class A felony dealing cocaine in, on, or within 1000 feet of a family housing complex. Howard was also determined to be a habitual offender. The trial court sentenced Howard to an aggregate term of forty years imprisonment, to be followed by an additional term in community corrections and on probation. Howard presents four issues for our review, which we consolidate and restate as:

> 1. Did the trial court abuse its discretion in admitting video recordings under the silent witness theory?

> 2. Is the evidence sufficient to sustain his convictions?

[2] We affirm.

## Facts & Procedural History

[3] The facts most favorable to Howard's convictions follow. The investigation that formed the basis of the criminal charges against Howard involved the use of confidential sources (CS) during two separate controlled buy situations. On December 9, 2013, officers with the Interdiction Covert Enforcement Unit of the Elkhart Police Department met with CS 13-032 and CS 11-119 at a predetermined location. The officers followed standard procedures for searching the sources and their vehicle to ensure that neither they nor their vehicle contained money or contraband. Officers reviewed messages between CS 13-032 and Howard arranging the location of the proposed drug purchase and were present when CS 13-032 called Howard to finalize the plans. After

the search, the sources were provided with money to purchase drugs from Howard. Officers outfitted the sources with audio-recording devices and installed a video-recording device in their vehicle.[1] The video camera was activated upon installation and the sources were not told how to switch it off.

[4] Howard directed that the drug sale was to occur in the 400 block of State Street in Elkhart. Two officers followed the sources' vehicle as they drove toward the specified area. Those officers briefly lost sight of the vehicle, but the vehicle had driven into view of another officer positioned to watch the location of the proposed sale. This officer observed the sources' vehicle park near 413 East State Street. The officer then saw a black man wearing a brown coat and gray sweatpants, who he later identified as Howard, exit a nearby building, approach the vehicle, and get in the back seat. A short time later, Howard exited the sources' vehicle and returned to the building from where he appeared.

[5] Officers followed the sources' vehicle to a predetermined location. CS 13-032 gave the officers the package she obtained from Howard in exchange for money, which was later determined to contain .35 grams of cocaine and another substance. Officers again searched the sources and their vehicle to ensure the absence of contraband other than the drugs Howard sold CS 13-032. An officer also retrieved the audio and video-recording devices. The contents of the video recorder's internal disc were downloaded to a computer drive of

---

[1] The video-recording device was self-contained and battery powered and utilized an internal disc to record images.

the Elkhart Police Department (EPD). Neither the equipment nor the recording displayed any sign of tampering.

[6] A printout from Google maps showed that the sale took place 262.64 feet from the River Run apartment complex in Elkhart. Officers described the "apartment complex" as containing a number of buildings that housed families and children. *Transcript Vol. 2* at 81. During the drug buy, officers observed families and children in and about the apartment complex.

[7] A second controlled drug buy between CS 13-032 and Howard was arranged for December 16, 2013. As before, CS 13-032 and CS 11-119 met officers at a predetermined location, where the sources and their car were searched to ensure the absence of drugs or other contraband. As with the December 9 drug buy, an officer installed a video-recording device in the sources' car. The recording device was activated upon installation and ran continuously until it was retrieved by the officer after the drug buy was completed.

[8] For this second transaction, Howard directed CS 13-032 to the 400 block of Chapman Avenue. Officers followed the sources' vehicle to that location, where Howard, again wearing a brown coat, was seen getting into the sources' vehicle. Officers followed as the vehicle continued down the road. The video recording shows that as they drove, CS 13-032 gave Howard cash. Howard continued riding in the backseat for a few minutes. The sources' vehicle was under visual observation by officers during the entire episode. After Howard exited the vehicle, officers followed the sources to a predetermined location.

CS 13-032 gave the officers the package Howard gave her in exchange for money, which was later determined to contain .44 grams of cocaine. The video-recording device was retrieved and the video recording was transferred to an EPD computer drive. The drug-buy occurred within 1000 feet of Washington Gardens, a government-subsidized, family-housing complex in Elkhart.

[9] On January 30, 2015, the State charged Howard with two counts of class A felony dealing in cocaine in, on, or within 1000 feet of a family housing complex. The State also alleged Howard to be a habitual offender. A two-day jury trial commenced on July 18, 2016, at the conclusion of which the jury found Howard guilty as charged.

## Discussion & Decision

### 1. Admission of Evidence

[10] Howard argues that the trial court abused its discretion when it admitted the video recordings of events inside the confidential sources' vehicle pursuant to the "silent witness theory." Trial courts have broad discretion in ruling on the admissibility of evidence, and such rulings will be reversed only upon a showing of an abuse of that discretion. *Palilonis v. State*, 970 N.E.2d 713, 725 (Ind. Ct. App. 2012), *trans. denied*. An abuse of discretion occurs when the trial court's ruling is clearly against the logic and effect of the facts and circumstances before it. *Id*. In reviewing a trial court's evidentiary rulings, we

will not reweigh the evidence, and we will consider conflicting evidence most favorable to the trial court's ruling. *Id*.

[11] On appeal, Howard argues neither video recording of the controlled-buy transactions "are sufficiently competent to speak for themselves." *Appellant's Brief* at 8. Specifically, Howard asserts that the videos are not "complete" in that the recordings only depicted portions of the scene, did not capture an exchange of a controlled substance, and the December 9 recording does not show Howard. Howard, however, did not object on these grounds at trial. Rather, he argued that the recordings contained "gestures" that constituted hearsay. He also argued that introduction of the recordings in absence of testimony from the confidential sources violated his right of confrontation in that he could not explore bias of the confidential sources. *Transcript Vol. 2* at 199. When a defendant presents an argument on appeal that is different than what was argued at trial, the claim is forfeited. *Lehman v. State*, 730 N.E.2d 701, 703 (Ind. 2000). Howard has therefore waived the issue for review.

[12] Waiver notwithstanding, Howard's argument is unpersuasive. Pursuant to the "silent witness" theory, "videotapes may be admitted as substantive evidence, but 'there must be a strong showing of authenticity and competency" including proof that the video recording has not been altered in any way. *McHenry v. State*, 820 N.E.2d 124, 128 (Ind. 2005) (quoting *Edwards v. State*, 762 N.E.2d 128, 136 (Ind. Ct. App. 2002), *trans. denied*). Our Supreme Court has explained that "[t]his higher standard is applied in situations where there is no one who can testify as to its accuracy and authenticity." *Edwards*, 762 N.E.2d at 136

(citing *Bergner v. State*, 397 N.E.2d 1012, 1015 (Ind. Ct. App. 1979)). At the core of the silent witness theory is the principle that there is no need for someone to testify that the photograph accurately depicts something because the photograph "speaks for itself". *Id.* (quoting *Bergner*, 397 N.E.2d at 1015). In cases involving automatic cameras, "there should be evidence as to how and when the camera was loaded, how frequently the camera was activated, when the photographs were taken, and the processing and chain of custody of the film after its removal from the camera. *McHenry*, 820 N.E.2d at 128 (citing *Murry v. State*, 179 Ind.App. 305, 308, 385 N.E.2d 469, 472 (1979)).

[13] Howard has expressly declined to challenge the admissibility of the video recordings on grounds that they had not been properly recorded and preserved. Howard argues only that the videos were not supported by sufficient testimony to persuade the trial court of their competency and authenticity.

[14] At trial, officers testified in detail as to how, for both controlled buys, a video recording device was placed in the front, center portion of the sources' vehicle so that it recorded activity inside the passenger compartment, specifically images of the back seat, at a relatively wide angle. The officers' testimony identified the scene that appeared in the videos as the passenger compartment of the vehicle used by the sources. The sources are shown seated in the front seats of the vehicle throughout both video recordings.

[15] The recording of the first controlled buy shows an uninterrupted view for about twenty-nine minutes. The recording of the second controlled buy shows an

uninterrupted view of the back seat of the vehicle that lasts for approximately fifteen minutes. After each controlled buy was completed, the sources met with officers at a predetermined location, at which time an officer retrieved the audio and video recording devices. The officers further testified regarding how the videos were preserved and that the recordings showed no sign of tampering.

[16]     In arguing that the video recordings were incomplete, Howard seems to suggest that the videos must show everything that was required to decide the case in order to fall under the silent witness theory. This, however, is not the standard.

[17]     Here, the State made a strong showing that the video recordings were authentic and competent through the officers' testimony about the procedures used, installation and use of the video-recording device, and absence of any indication of tampering. *See Mays v. State*, 907 N.E.2d 128 (Ind. Ct. App. 2009) (upholding admission of a silent witness video of a drug deal where officer testified about the equipment used to make the recording and "that the video contained on the CD was consistent with what he knew to have taken place, and that he had no reason to believe that the CD had been altered or tampered with in any way"), *trans. denied*. The videos did speak for themselves in that they were recordings of the interior compartment of the sources' vehicle at the time of the controlled buy. The trial court did not abuse its discretion in admitting the video recordings of the two controlled buys.

## Sufficiency

[18] Howard argues that the evidence is insufficient to sustain his convictions. In reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Atteberry v. State*, 911 N.E.2d 601, 609 (Ind. Ct. App. 2009). Instead, we consider only the evidence supporting the conviction and the reasonable inferences flowing therefrom. *Id*. If there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt, the judgment will not be disturbed. *Baumgartner v. State*, 891 N.E.2d 1131, 1137 (Ind. Ct. App. 2008).

[19] To convict Howard of dealing cocaine, the State was required to prove that he knowingly delivered cocaine within 1000 feet of a family housing complex. *See* Ind. Code § 35-48-4-1(a)(1)(C), (b)(3)(B)(iii). Count I was specific to the controlled buy that took place on December 9, 2013, and alleged that the drug transaction occurred within 1000 feet of River Run Apartments. Count II covered the December 16 controlled buy and alleged that the drug transaction occurred within 1000 feet of Washington Gardens Apartments.

[20] With regard to Count I, Howard argues that that there is a complete lack of probative evidence from which the jury could have concluded that he committed the crime charged in Count I. We disagree. The State's evidence showed that CS 13-032 planned to meet Howard to purchase cocaine from him. Officers who served as eyewitnesses to the drug transaction described the man

who entered the sources' vehicle on December 9 as a black man wearing a brown jacket. A similar procedure was used in conducting the December 16 controlled buy, and in the video recording of that transaction, a black man in a brown jacket is clearly seen sitting in the back seat of the sources' vehicle. Several officers testified that they determined that Howard was the individual wearing the brown jacket during both controlled-buy situations. Further, the jury could observe Howard's appearance in court and compare it with the video image of the individual in the back seat of the sources' vehicle during the December 16 controlled buy. No other person entered or exited the sources' vehicle during either transaction. This is sufficient evidence from which the jury could have drawn a reasonable inference that Howard was the drug dealer during the December 9 drug transaction. Howard's argument is simply a request that this court reweigh the evidence and draw inferences favorable to him, which this court will not do on appeal. *See Atteberry*, 911 N.E.2d at 609.

[21] As to Count II, Howard argues that the evidence did not prove that there was an exchange of a controlled substance. Again, Howard's argument amounts to a request that this court reweigh the evidence and judge the credibility of the witnesses. The video recording of the December 16 controlled buy clearly shows Howard taking money from CS 13-032 and then reaching to an area not visible to the recording device. The State also established that the sources and their vehicle were searched to ensure the absence of contraband prior to the controlled buy and that they were kept under surveillance before, during, and after the drug transaction until they reached the predetermined location. There,

the sources and their vehicle were searched again and only the cocaine that is the subject of Count II was found in their possession. The jury could draw a reasonable inference that the cocaine retrieved from CS 13-032 had been delivered by Howard in exchange for the money he kept.

[22] Finally, with regard to both Counts, Howard argues that the State's evidence was insufficient to establish that the drug transactions occurred within 1000 feet of a family housing complex. At the time the crimes were committed, a family housing complex was defined as "a building or series of buildings . . . that is operated as an apartment complex" or "contains subsidized housing." Ind. Code § 35-31.5-2-127 (2016). In Count I, the December 9 drug transaction was alleged to have occurred with 1000 feet of River Run Apartments. The jury heard testimony that at the time of the December 9 drug transaction, River Run was an "apartment complex" that contained a number of buildings, it was "operated as an apartment complex," and featured families and children coming and going from the premises. *Transcript Vol. 2* at 81; *Transcript Vol. 3* at 5. In Count II, the December 16 drug transaction was alleged to have occurred within 1000 feet of Washington Garden Apartments. There was testimony that the Washington Garden Apartments was a government-subsidized, family housing complex operated by the Elkhart Housing Authority and that families and children lived there. The State presented sufficient evidence from which a reasonable inference could be drawn that both locations were family housing complexes within the statute.

[23] In sum, the State presented sufficient evidence to sustain Howard's convictions for Class A felony dealing cocaine within 1000 feet of a family housing complex.

[24] Judgment affirmed.

[25] Kirsch, J. and Mathias, J., concur.