## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 11 2019, 10:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Elizabeth A. Bellin
Elkhart, Indiana

ATTORNEYS FOR APPELLEES

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

D'Angelo A. Honorable,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

April 11, 2019

Court of Appeals Case No.
18A-CR-2345

Appeal from the Elkhart Circuit Court

The Hon. Michael A. Christofeno, Judge

Trial Court Cause No.
20C01-1702-MR-2

**Bradford, Judge.**

# Case Summary

In November of 2016, D'Angelo Honorable, born on June 11, 2002, got into an argument with his friend's ex-girlfriend that all started with a post the ex-girlfriend made on Facebook. The conflict culminated in Honorable shooting five bullets into the ex-girlfriend's house, which was occupied by numerous individuals including four children, killing her mother. Honorable was tried as an adult for murder, convicted as charged, and sentenced to sixty-four years of incarceration with five suspended to probation. Honorable contends that the State failed to produce sufficient evidence to sustain his conviction, his sentence is inappropriately harsh, and the trial court abused its discretion in refusing to impose alternative juvenile sentencing. Because we disagree with all of Honorable's contentions, we affirm.

# Facts and Procedural History

In November of 2016, Breanna Humphries lived with her mother Teketa Hixson and several others in a house at 201 Park Avenue in Elkhart, while Humphries's ex-boyfriend Clarence Sims lived nearby at 2014 Roys Avenue. On the afternoon of November 30, 2016, Sims and Humphries exchanged angry text messages over something she had posted about him on Facebook. When Humphries texted Sims that she wanted to spit on him, he dared her to try, and she left 201 Park to confront Sims at his aunt's house at 130 West Cleveland Avenue.

When Humphries arrived with a friend, she argued with Sims and the then-fourteen-year-old Honorable through an open window, but Sims and

Honorable refused to come outside. Humphries left and returned with her male cousin, who told Sims and Honorable to come outside. Honorable responded, "No, we're waiting on E-Dub. We have a mission to do." Tr. Vol. III p. 106. E-Dub was a friend of Humphries's aunt who frequently visited at 130 West Cleveland. Humphries and the others eventually left, and she returned home to 201 Park at approximately 8:00 p.m.

[4] At approximately 9:00 p.m., Humphries, wanting to have the last word, started a text conversation with Honorable. The exchange was acrimonious, with Humphries generally ridiculing Honorable and Sims for being too cowardly to come outside when she had come over to confront Sims, and Honorable, *inter alia*, threatening to "f*** yo house up." Tr. Vol. III p. 121. Shortly after 9:15 p.m., Hixson's nephew Tyquan Page encountered Honorable, who was carrying a handgun, in an alleyway near 201 Park. When Page asked Honorable what he was doing, he replied that he was "gonna shoot up the house." Tr. Vol. IV p. 10. Honorable also indicated that he had obtained the handgun from E-Dub. Page called to warn Hixson about Honorable, but she was skeptical.

[5] At 201 Park, Hixson had just ended her telephone call with Page when the shooting began. Honorable had concealed himself behind a nearby garage and fired five shots into the house. Approximately ten persons were inside the house at the time, and lights were on in many rooms, including at least one upstairs bedroom, a downstairs bedroom, a family room, and the kitchen. The bullets all struck the house near the family room window, with three entering

the family room, one becoming embedded in the house's framing, and one entering an upstairs sitting area. Evidence indicated that the curtain on the family room window was open at the time. One of the bullets that entered the family room passed through a wall into a bedroom, striking Hixson in the head. Hixson eventually succumbed to her wound.

[6] On February 1, 2017, the State charged Honorable with murder following the juvenile court's waiver of jurisdiction. On August 8, 2018, a jury found Honorable guilty as charged, and, on August 30, 2018, the trial court sentenced him to sixty-four years of incarceration with five suspended to probation. The trial court found Honorable's age and statements to be mitigating. The trial court found, as aggravating circumstances, his prior criminal history, including five adjudications for violent behavior; his violent behavior at the juvenile detention center, including attacking a staff member; his use of alcohol and marijuana; his repeated use of a firearm; his failure to take advantage of various past alternative sanctions and resources; the circumstances of the crime, including the presence of children; and the senselessness of the crime. The trial court also denied Honorable's request for alternative juvenile sentencing.

# Discussion and Decision

## I. Sufficiency of the Evidence

[7] Honorable contends that the State failed to present evidence sufficient to sustain his conviction for murder. When a defendant challenges the sufficiency of the evidence used to convict him of a crime, we consider only the probative evidence and reasonable inferences arising therefrom supporting the conviction.

*Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We will affirm a conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Young v. State*, 973 N.E.2d 1225, 1226 (Ind. Ct. App. 2012). Put another way, reversal of a defendant's conviction "is appropriate only when a reasonable trier of fact would not be able to form inferences as to each material element of the offense." *Purvis v. State*, 87 N.E.3d 1119, 1124 (Ind. Ct. App. 2017), *aff'd on reh'g*, 96 N.E.3d 123 (Ind. Ct. App. 2018). This standard of review does not permit us to reweigh the evidence or allow us to judge the credibility of the witnesses. *McCallister v. State*, 91 N.E.3d 554, 558 (Ind. 2018). In cases where there is conflicting evidence in the record, we consider the evidence in the light most favorable to the trial court's judgment. *Drane*, 867 N.E.2d at 146.

[8] Here, the State was required to establish that Honorable knowingly killed Hixson, and Honorable challenges only the State's proof that he did it "knowingly." Ind. Code § 35-42-1-1(1). "A person knowingly kills when he is aware of a high probability that he is engaged in killing." *Lehman v. State*, 730 N.E.2d 701, 704 (Ind. 2000); *see also* Ind. Code § 35-41-2-2(b) ("A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so."). A defendant's state of mind can be established "by the circumstances surrounding the killing and the method of killing." *Ronk v. State*, 470 N.E.2d 1337, 1339 (Ind. 1984). "[K]nowing killing may be inferred from a defendant's use of a deadly weapon in a manner likely to cause death." *Barker v. State*, 695 N.E.2d 925, 931 (Ind. 1998).

[9] The circumstances allowed the jury to find that Honorable knew that his actions were likely to cause death. Honorable shot five bullets into a house being fully aware that Humphries lived there with her mother and siblings and which, at the time of the shooting, was occupied by at least four children and many adults, several of whom were in the family room. Moreover, the record contains ample evidence that the house was occupied at the time. Lights were on in many rooms, including at least one upstairs bedroom, the living room, a downstairs bedroom, and the kitchen. Televisions were on in the family room and downstairs bedroom, and a laptop computer was on upstairs. From his position nearby, it is reasonable to infer that Honorable saw the lights on in the family room, the kitchen, and the upstairs bedroom, at the very least, and very likely the flickering of televisions.

[10] Despite indications of current occupation, Honorable's bullets all struck the house near the family-room window, with one becoming embedded in the house's framing, three entering the family room in which several persons were sitting, and one entering an upstairs sitting area. While there was a curtain on the family-room window, the evidence indicated that the curtain was open at the time. Even if the curtain had been drawn, a witness described the curtain as "thin-like" and explained that an observer would have been able to see if there was somebody in the room. Tr. Vol. IV p. 40. We conclude that the evidence supports a conclusion that Honorable shot at the house aware of a high probability that somebody inside would be killed.

Honorable points to his testimony that he believed the house was unoccupied when he fired five shots into it and that he was aiming at the brick near the bottom of the house. The jury, however, was not required to credit either of these claims and did not. We conclude that the State produced sufficient evidence to sustain a finding that Honorable had a knowing intent to kill. Honorable's argument amounts to nothing more than an invitation to reweigh the evidence, which we will not do. *See McCallister*, 91 N.E.3d at 558.

## II. Whether Honorable's Sentence is Inappropriate

Honorable contends that his sentence is inappropriately harsh. We will revise a sentence only if, upon "due consideration of the trial court's decision" it nonetheless appears that "the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B); *Anglemyer v. State*, 868 N.E.2d 482, 490–91 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (2007). The "nature of the offense" refers to the defendant's acts in comparison with the elements of his offense, *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008), while "character of the offender" refers to general sentencing considerations and the relevant aggravating and mitigating circumstances. *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014). Honorable has the burden to show his sentence is inappropriate in light of both the nature of the offense and his character. *Gil v. State*, 988 N.E.2d 1231, 1237 (Ind. Ct. App. 2013). This can only be done with "compelling evidence portraying in a positive light the nature of the offense […] and the defendant's character." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). The trial court sentenced Honorable to sixty-four

years of incarceration, with five suspended to probation.  The sentencing range for murder is forty-five to sixty-five years, with an advisory sentence of fifty-five years.  Ind. Code § 35-50-2-3.

[13]  The nature of Honorable's offense is disturbing.  Honorable fired five bullets into a house occupied by approximately ten persons, including four children. When Hixson—a mother of four—was shot, she was sitting on a bed next to a one-year-old child.  While Honorable's actions only resulted in one death, the consequences could have been far worse.  Even so, as the trial court noted, the shooting destroyed two families by leaving Hixson's four children without a mother and by causing despair to Honorable's own family.  Moreover, as the trial court also noted, the shooting was particularly senseless with Honorable wanting "to get street cred […] to show how tough [he is] so that […] everybody better know[s] not to mess with" him.  Tr. Vol. V p. 65.  While Honorable attempts to characterize his crime as insuring that Humphries would not hurt his grandfather, the text message evidence shows that this shooting was mere retaliation for Humphries taunting him for not coming outside during her argument with Sims.  In any event, Honorable told police that Humphries had only threatened to hurt his grandfather's truck.  The nature of Honorable's offense suggests that his sentence is not inappropriate.

[14]  Honorable's character does not bode well for his argument.  The character of the offender is found in what is learned regarding a defendant's life and conduct.  *See Lindsey v. State*, 916 N.E.2d 230, 241–42 (Ind. Ct. App. 2009) (reviewing the defendant's criminal history, probation violations, and history of

misconduct while incarcerated), *trans. denied*. Despite being only sixteen years old at the time of sentencing, Honorable already had a significant history of delinquency including an informal adjustment for theft, four adjudications for battery, and one adjudication for battery resulting in bodily injury. Honorable behaved violently while placed in juvenile detention, attacking a staff member. As the trial court observed, "[e]very time [Honorable] get[s] the choice, [he] choose[s] violence." Tr. Vol. V. p. 65.

[15] Moreover, Honorable has shown little to no interest in reforming himself to date. Honorable has been provided with resources and alternative sanctions aimed at modifying his behavior, all to no avail, including informal adjustment, shoplifting clinic, juvenile detention, non-reporting probation, supervised probation, community service, counseling, restitution, random drug screens, and education. Honorable has an admitted history of alcohol and marijuana use, including daily use of marijuana and use of both alcohol and marijuana on the day of the shooting.

[16] Finally, the trial court properly considered Honorable's statements of remorse. As we have observed, "the trial court is in the best position to judge the sincerity of a defendant's remorseful statements." *Stout v. State*, 834 N.E.2d 707, 711 (Ind. Ct. App. 2005), *trans. denied*. Here, while the court did find Honorable's statements to be mitigating, it also observed Honorable's conduct during trial and sentencing and found that he "never showed remorse for [his] actions[.]" Tr. Vol. V pp. 65–66. The trial court observed that "there is a hollowness to your words when you say you're sorry." Tr. Vol. V p. 66. This

finding was within the trial court's discretion. *See Stout*, 834 N.E.2d at 711. In light of the nature of his offense and his character, we conclude that Honorable has failed to establish that his sentence is inappropriately harsh.

## III. Whether the Trial Court Abused is Discretion in Declining to Impose Alternative Juvenile Sentencing

[17] Indiana Code section 31-30-4-2 provides that when an offender under the age of eighteen is convicted of a felony in criminal court, the trial court "may […] impose a sentence upon the conviction of the offender under this chapter[,]" which allows for suspended sentences or juvenile commitments instead of a criminal sentence. The statute explicitly leaves application of alternative juvenile sentencing to the discretion of the trial court. *Id*. In *Legg v. State*, 22 N.E.3d 763 (Ind. Ct. App. 2014), *trans. denied*, we concluded that while there are no mandatory considerations for a trial court making this determination, the criteria listed in Indiana Code section 31-30-3-2 regarding waiver into adult court "are good examples of the kinds of criteria a trial court may consider in reaching its decision on this issue." *Id*. at 767. That waiver provision sets out five considerations:

> (1) the child is charged with an act that is a felony:
>
>> (A) that is heinous or aggravated, with greater weight given to acts against the person than to acts against property; or
>>
>> (B) that is a part of a repetitive pattern of delinquent acts, even though less serious;
>
> (2) the child was at least fourteen (14) years of age when the act charged was allegedly committed;

(3) there is probable cause to believe that the child committed the act;

(4) the child is beyond rehabilitation under the juvenile justice system; and

(5) it is in the best interests of the safety and welfare of the community that the child stand trial as an adult.

Ind. Code § 31-30-3-2.

[18] Here, we conclude that the same circumstances that supported waiver into adult court also supported denial of alternative sentencing. Honorable's criminal conduct of firing repeatedly into a home occupied by approximately ten persons, including four children, was heinous, and more than one death could easily have resulted. Honorable also has a significant record of delinquency, including prior acts of violence and failed efforts at rehabilitation. The trial court had more than enough evidence to implicitly conclude that the juvenile rehabilitation system could no longer help Honorable and that it was in the best interests of the community that he receive an adult sentence. Based upon the seriousness of the offense and Honorable's failure to reform his conduct in the juvenile system, we conclude that the trial court was within its discretion to decline his request to apply the alternative juvenile sentencing statute. *See Legg*, 22 N.E.3d at 767 (concluding that the trial court did not abuse its discretion in refusing to alternatively sentence a sixteen-year-old who committed murder as part of a pattern of other delinquent acts).

[19] We affirm the judgment of the trial court.

Crone, J., and Tavitas, J., concur.