Matthew **FINNEY**, Appellant–
Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 55A05–0209–CR–421.

Court of Appeals of Indiana.

April 17, 2003.

Gregory T. Lauer, Loretta Lauer, Lauer and Lauer, Martinsville, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Matthew Finney appeals his conviction for resisting law enforcement as a Class D felony. We affirm.

### Issue

The sole restated issue is whether the trial court committed reversible error by not striking the testimony of a police officer regarding a statement Finney had made to him.

### Facts

The evidence most favorable to the conviction reveals that on November 15, 2001, Indiana State Police Trooper Jeff Finchum was on patrol in Paragon when he observed what he believed to be three suspi-

cious persons sitting in a pickup truck in a bar parking lot. When the pickup left the parking lot, Finchum decided to follow it and pull it over if he observed any traffic violations. After the driver of the pickup failed to signal before turning, Finchum activated his emergency lights to initiate a traffic stop. The pickup, however, sped up and drove away from Finchum, who eventually lost sight of the pickup. Finchum soon found the pickup stopped near a residence and a shed. The pickup was empty, with the driver's door open, keys in the ignition, a full six-pack of beer on the floor, and the radio still playing. Finchum looked in the shed and found Leslie Cornett hiding there, who said that Finney had been driving and that he lived at the residence. Police officers were unable to locate Finney that night. The pickup was registered to Finney and a "D" Finney, apparently his mother.

On November 21, 2001, the State filed an information charging Finney with resisting law enforcement as a Class D felony. An arrest warrant for Finney also was issued on November 21. Attorney Dale Coffey thereafter spoke directly to Finchum and advised him that Finney would turn himself in at the Morgan County Sheriff's Department. Finney did so on the afternoon of November 21. After placing Finney into handcuffs and Mirandizing him, Finchum asked Finney "why did you

run?" Finney responded, "it was a dumb mistake or a stupid mistake." Tr. p. 140. Finchum related this question and answer to the jury at trial on June 25, 2002, and the trial court denied Finney's motion to strike the testimony. Finney was convicted as charged and now appeals.

### Analysis

■■■■ Finney contends that the trial court's refusal to strike Finchum's testimony regarding what Finney told him in response to the question "why did you run" constitutes reversible error.[1] We will not disturb the trial court's decision to admit a defendant's statement absent an abuse of discretion. *Giles v. State*, 760 N.E.2d 248, 249 (Ind.Ct.App.2002). "When considering the admissibility of a confession on appeal, we will uphold the finding of the trial court if there is substantial evidence of probative value to support it." *Id.* Here, the State has essentially and correctly conceded that the trial court abused its discretion in admitting Finchum's testimony into evidence.

■■■■ As opposed to the Fifth Amendment, a defendant's Sixth Amendment right to counsel under the United States Constitution attaches upon the commencement of adversarial judicial criminal proceedings by the State. *See Kirby v. Illinois*, 406 U.S. 682, 689–90, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972). Among other possibilities, the filing of an information charging the defendant with a crime marks

---

1. Finney's trial counsel did not immediately object to Finchum's testimony but did move to strike the testimony shortly thereafter. Cases decided prior to the adoption of the Indiana Rules of Evidence would have held that Finney thereby waived any claim of error on this point. *See Northern Indiana Public Service Co. v. Otis*, 145 Ind.App. 159, 250 N.E.2d 378, 406 (1969) (holding that "[a] party who is not examining a witness cannot use a motion to strike as a means of objection to a question after it has been answered."). Indiana Evidence Rule 103(a), however, allows preservation of claims of errors where

"a timely objection *or* motion to strike appears of record ...." (emphasis added). Additionally, Finney's trial counsel claimed to be unaware that his client had made the challenged statement to Finchum until after Finchum testified about it. *See Wagner v. State*, 474 N.E.2d 476, 491–92 (Ind.1985) (recognizing exception to waiver rule for failure to preemptively object to testimony when "the objectionable answer could not have been anticipated"). In any event, the State does not claim waiver of this issue, and we address it on the merits.

the commencement of such proceedings. *See Sweeney v. State,* 704 N.E.2d 86, 106 (Ind.1998), *cert. denied,* 527 U.S. 1035, 119 S.Ct. 2393, 144 L.Ed.2d 793 (1999). If police initiate interrogation after a defendant's assertion of his Sixth Amendment right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid. *Michigan v. Jackson,* 475 U.S. 625, 636, 106 S.Ct. 1404, 1411, 89 L.Ed.2d 631 (1986). "After the Sixth Amendment right to counsel is invoked, a waiver in response to police-initiated interrogation, *even after additional Miranda warnings,* is not sufficiently voluntary and intelligent to meet the constitutional mandate of the Sixth and Fourteenth Amendments." *Heffner v. State,* 530 N.E.2d 297, 303 (Ind.1988) (emphasis added). It is presumed that once a defendant requests a lawyer's services, those services are desired at every critical stage of the prosecution, including interrogations. *Jackson,* 475 U.S. at 633, 106 S.Ct. at 1409.

Here, the State initiated formal criminal proceedings against Finney by filing an information against him on November 21, 2001. His Sixth Amendment right to counsel attached at that time. *See Sweeney,* 704 N.E.2d at 106. Somehow, Finney became aware of this filing and presumably the filing of the arrest warrant also on November 21; at some point, he retained an attorney to assist him in this matter. Finney unmistakably evidenced his desire to deal with the authorities only through his attorney when the attorney contacted Finchum directly to arrange for Finney's surrender at the Morgan County Sheriff's Department. Although neither party has cited and we are aware of no

case encompassing the precise fact pattern before us, we hold that when a defendant, whose Sixth Amendment right to counsel has attached, has retained an attorney and that attorney makes his representation of the defendant known to the State, the Sixth Amendment right to counsel has been invoked.[2] We see no sound basis for distinguishing such a scenario from one in which a defendant requests counsel at an initial hearing or arraignment, which constitutes a blanket invocation of the Sixth Amendment right to counsel. *See Jackson,* 475 U.S. at 636, 106 S.Ct. at 1411. In both cases, formal criminal proceedings have begun, the defendant has either requested or actually retained counsel, thus indicating " 'he does not believe that he is sufficiently capable of dealing with his adversaries singlehandedly,' " and that request or retention has been made known to some State actor, whether it be a court or a police officer. *See id.* at 632–635, 106 S.Ct. at 1409–1410 (quoting *People v. Bladel,* 421 Mich. 39, 64, 365 N.W.2d 56, 67 (1984)). In this case, that actor was the very same one who later questioned Finney. There is no dispute that Finchum questioned Finney and that Finney did not spontaneously volunteer the statement, thus making the question impermissible "police-initiated interrogation." *See id.* at 635, 106 S.Ct. at 1410–11. Further, Finney's purported waiver of his right to counsel after the reading of his Miranda rights was ineffectual with respect to his *Sixth* Amendment right to counsel. *See Heffner,* 530 N.E.2d at 303. The trial court abused its discretion in denying Finney's motion to strike Finchum's testimony.

2. We note that this fact pattern is unlike those scenarios in which a third party has retained an attorney for the defendant, *unbeknownst to the defendant,* in which case the attorney's contacting of the police without the defendant's knowledge has no Sixth Amendment ramifications. *See U.S. v. Scarpa,* 897 F.2d 63, 69–70 (2nd Cir.1990), *cert. denied,* 498 U.S. 816, 111 S.Ct. 57, 112 L.Ed.2d 32.

Statements obtained in violation of the federal constitution and erroneously admitted are subject to harmless error analysis. *Alford v. State,* 699 N.E.2d 247, 251 (Ind.1998). "A federal constitutional error is reviewed de novo and must be 'harmless beyond a reasonable doubt.'" *Id.* (quoting *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)). The State bears the burden of demonstrating that the improper admission of a defendant's statement did not contribute to the conviction. *Id.* (quoting *Arizona v. Fulminante,* 499 U.S. 279, 296, 111 S.Ct. 1246, 1257, 113 L.Ed.2d 302 (1991)). "'To say that an error did not contribute to the verdict is . . . to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.'" *Id.* (quoting *Yates v. Evatt,* 500 U.S. 391, 403, 111 S.Ct. 1884, 1893, 114 L.Ed.2d 432 (1991), *disapproved on other grounds by Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)). If the State has presented other overwhelming evidence of the defendant's guilt, then an erroneously admitted statement may be deemed harmless. *See Rawley v. State,* 724 N.E.2d 1087, 1090 (Ind.2000).

We conclude the State has adequately demonstrated the existence of overwhelming evidence of Finney's guilt that sufficiently minimizes any prejudicial effect that Finchum's challenged testimony might have had. At trial, Finney never claimed that he was not driving the pickup on the night in question. Both Cornett, testifying for the State, and Ryan Scott, who testified for the defense and was the third person in the pickup, stated that Finney was driving; additionally, the pickup was registered to Finney. Rather, his defense appears to have been either that he was unaware that Finchum was attempting to pull him over or that Finchum, for some reason, had never actually activated his lights to pull Finney over but wished to charge Finney with resisting law enforcement anyway.

Scott, who had been friends with Finney for ten years, testified that he never saw any police lights behind the pickup and that Finney never reached excessive speed while driving from the bar to his residence. In contrast to this testimony, Cornett testified that she did see the police lights behind them after Finney turned without signaling, that the police car was about two car lengths behind the pickup, and that Finney sped up after the lights first came on. Finchum also testified that he was about two car lengths behind the pickup when he activated his lights and that Finney sped up thereafter. Additionally, when Finchum eventually reached the stopped pickup, it had every appearance that its occupants had hastily fled: the driver's door was still open, the key was still in the ignition and the radio was still on, and one of the occupants was hiding nearby. Also, Scott could not explain why he had left the six-pack of beer he had just purchased on the floor of the pickup. We conclude the State presented overwhelming evidence that Finney knowingly or intentionally fled from a law enforcement officer after the officer, by visible means, identified himself and ordered Finney to stop as required to support Finney's conviction for resisting law enforcement under Indiana Code Section 35–44–3–3. We also note that the challenged statement was not an unequivocal admission of guilt. Finney allegedly stated that it was a "dumb mistake or a stupid mistake" to "run" from the officer; he apparently made no statement directly admitting that he had seen Finchum's lights and knowingly or intentionally drove away anyway. Tr. p. 140. In the face of the State's evidence, we conclude the erroneous admission of Finchum's challenged testimony, which consist-

ed of two sentences, is unimportant when viewed in the context of the entire record the jury had to consider on the issue of Finney's guilt. *See Alford,* 699 N.E.2d at 251. Thus, the trial court's improper failure to strike the challenged testimony amounts to harmless, not reversible, error.

Although the facts here lead us to the conclusion that in this particular instance the conviction will be upheld, we think it appropriate to clearly and plainly say to all arms of law enforcement that a defendant's Sixth Amendment right to counsel, which had plainly attached in this case, is an important and inviolable right. Here, the police officer who had given chase to the fleeing vehicle was the officer who met Finney at the Sheriff's Department. This officer undoubtedly had more than a passing interest in Finney's arrest. Absent other overwhelming evidence of Finney's guilt, we would not have hesitated to reverse this conviction.

### Conclusion

The trial court abused its discretion by not striking from the evidence Finney's statement that it had been a mistake to flee from Finchum, as that statement was obtained in violation of Finney's Sixth Amendment right to counsel. Nonetheless, we conclude that this error was harmless in light of the other evidence of Finney's guilt. We affirm the conviction.

Affirmed.

RILEY, J., and SHARPNACK, J., concur.