Montas L. HENDRICKS, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 48A02–0805–CR–407.

Court of Appeals of Indiana.

Dec. 12, 2008.

David W. Stone, IV, Anderson, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Joby Jerrells, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Montas Hendricks appeals his conviction for Class A felony dealing in cocaine. We affirm.

### Issues

We restate the three issues before us as:

I. whether Hendricks waived his right to appeal the admission of the cocaine found on his person because he testified to possessing it at trial;

II. whether the trial court properly admitted the cocaine found on Hendricks' person; and

III. whether the trial court properly admitted the statement Hendricks made to police.

### Facts

In July 2007, Hendricks was arrested for Class A felony dealing in cocaine and Class A misdemeanor resisting law enforcement. Hendricks was arrested at the house of Carol Aynes. Hendricks had previously sold cocaine to Aynes on numerous occasions; however, at the time of this sale, Aynes was serving as a confidential informant for the Madison County Drug Task Force.

In March 2007, Aynes and Hendricks were in a drug treatment group together at the Crestview Center in Anderson. Aynes told Detective Earley of the Task Force that Hendricks was dealing cocaine, and Detective Earley told Aynes to let him know when Hendricks had cocaine available to sell. Hendricks finished treatment before Aynes, but he gave Aynes his new cell phone number.

Aynes subsequently made a number of calls to Hendricks inquiring about buying one ounce of cocaine, and Hendricks agreed to sell Aynes one ounce of cocaine for one thousand dollars. Next, Aynes contacted Detective Earley and let him know that she had arranged to purchase cocaine from Hendricks.

Detective Earley asked Aynes to make another phone call to Hendricks, this time recorded, in an attempt to buy an additional half-ounce of cocaine. Hendricks agreed to the sale, stating the price would now be sixteen hundred dollars. When Hendricks was on his way to Aynes' house to complete the transaction, he made a phone call, which was also recorded, to Aynes asking her for directions. During that phone call Hendricks indicated he had the cocaine with him.

Detective Earley and two other officers were hiding at Aynes' house waiting for Hendricks' arrival. When Hendricks arrived, Aynes told him she needed to go into the other room to get the sixteen hundred dollars. When Aynes went into the other room, the officers came out of hiding and Detective Earley identified himself as a police officer. He told Hendricks to get on the floor, and Hendricks did not respond. The officers forced Hen-

dricks to the floor and handcuffed him. Hendricks physically struggled with the officers and "headbutted" Detective Earley. Tr. p. 99.

The officers shook Hendricks' clothing and checked his pockets for the cocaine. When the cocaine was not found, Detective Earley pulled Hendricks' waistband back, and saw a yellow object protruding from "the cheeks of [Hendricks'] butt." Tr. p. 98. The detectives lowered Hendricks' pants and retrieved the yellow item from Hendricks' buttocks. The yellow item was a napkin wrapped around a piece of clear plastic holding 41.25 grams of cocaine.

The officers took Hendricks to the police station. After reading Hendricks his Miranda rights, Detective Earley asked Hendricks to sign a waiver of those rights. Hendricks did not seem to understand well, but did state "so I can do this in front of an attorney or something?" and "I am not saying nothing." Tr. pp. 3–4. After some verbal exchanges between Hendricks and Detective Earley, Hendricks signed the waiver and gave a statement to the police.

Before trial, Hendricks filed a motion to suppress his statement given to the police. He argued he had asserted his right to remain silent under the United States Constitution. The motion was denied. Hendricks filed a second motion to suppress, this time to suppress the cocaine found on his person. He argued the search performed was unreasonable under the Fourth Amendment of the United States Constitution, and Article 1, Section 11 of the Indiana Constitution. The second motion was also denied.

Hendricks did not file interlocutory appeals for the motions to suppress, and pled guilty to resisting law enforcement as a Class A misdemeanor. On December 6, 2007, Hendricks was found guilty of the dealing in cocaine charge. Hendricks now appeals that conviction.

## Analysis

Hendricks challenges his conviction based on the assertion that the trial court improperly admitted the cocaine found on his person and the statement given to the police. Although Hendricks filed two motions to suppress evidence, upon denial of those motions he did not file interlocutory appeals and proceeded to trial; thus, the sole claim now is whether the trial court abused its discretion in admitting the evidence. *See Kelley v. State,* 825 N.E.2d 420, 425 (Ind.Ct.App.2005). A trial court has broad discretion in ruling on the admissibility of evidence. *Turner v. State,* 878 N.E.2d 286, 292 (Ind.Ct.App.2007), *trans. denied.* An abuse of discretion occurs if a decision is clearly against the logic and effect of the facts and circumstances before the court. *See Kelley,* 825 N.E.2d at 427. In reviewing the trial court's ultimate ruling on admissibility, we may consider the foundational evidence from the trial as well as evidence from the motion to suppress hearing that is not in direct conflict with the trial testimony. *Id.*

### I. Waiver

■ As a preliminary matter, we reject the State's argument that Hendricks waived or abandoned his right to object on appeal to the introduction of the cocaine by later admitting at trial that he possessed it. The State first cites as authority *Moran v. State,* 644 N.E.2d 536, 540 (Ind.1994), and argues "the right in section 11 is personal and can be waived by consent or abandonment." Appellee's Br. p. 5. The court in *Moran* held the Indiana Constitution did not provide a defendant protection when that person "abandoned" trash at the curb for pickup. *See Moran,* 644 N.E.2d at 541. The State implies that because Hendricks testified to possessing the cocaine at trial, he "abandoned" his right to

object to the evidence on appeal. At least with respect to "abandonment", the reasoning in *Moran* is no longer good law. *See Jefferson v. State*, 891 N.E.2d 77, 81 (Ind.Ct.App.2008) *trans. denied.* Even if it were, we feel it is an illogical leap to link trash being left at a curb and a defendant's testimony at trial.

Additionally, the State cites *Speybroeck v. State*, 198 Ind. 683, 154 N.E. 1 (1926). We conclude the State misinterpreted or misapplied the reasoning in *Speybroeck.* In *Speybroeck*, the defendant testified he was not the owner or in possession of the place searched or the property found by the search. *See Speybroeck*, 198 Ind. at 685, 154 N.E. at 2. The court therefore held he could not object to the search and seizure. *See id.* at 685–86, 154 N.E. at 2. It was not the fact that the defendant testified that caused him to "abandon" his interest in the premises searched at trial as the State argues, but instead his actual testimony revealed he had no interest in the premises and, essentially, no standing to object to the search.

The State also argues we should adopt a rule discussed in Professor LaFave's *Search and Seizure* treatise. This rule provides a defendant may not complain on appeal about the trial court's admission of evidence if the defendant testified to possessing the evidence at trial. Even though the rule is discussed in Professor LaFave's treatise, LaFave points out that this rule is adopted only by a minority of states. The minority view also thwarts the purpose of the exclusionary rule. 5 WAYNE R. LA-FAVE, SEARCH AND SEIZURE § 11.1(c) (West 3rd ed. 1996).

Professor LaFave explains:

A few jurisdictions adhere to the position that a defendant may not complain on appeal about the admission of evidence on Fourth Amendment grounds, notwithstanding a timely objection at or before trial asserting such grounds, if the defendant gave testimony at trial admitting the possession of that evidence....

The rationale of the rule is unclear. Some cases refer to the defendant's admission as a "waiver" of his Fourth Amendment objection ... [one] explanation is that the defendant's admission had reduced the allegedly improper search and improper introduction of the fruits thereof to "nothing more than harmless error...."

Of the distinct minority of states who have followed the rule that a defendant waives his objection to the admission of illegally seized evidence if he testifies to having owned or possessed that evidence, about half have abandoned the rule in recent years. This is an encouraging development, for the rule is unsound. It serves no legitimate state interest, and places the defendant in the dilemma where he must either ignore the damaging evidence introduced against him or waive his right to appeal its erroneous introduction. Indeed, it has been concluded that application of the rule will except in extraordinary circumstances be unconstitutional....

5 WAYNE R. LaFAVE, SEARCH AND SEIZURE § 11.1(c) (West 3rd ed. 1996), (citations omitted) (alteration in original).

The exclusionary rule provides evidence obtained through an illegal search and seizure is inadmissible at trial—it is a judicially created remedy designed to safeguard the right of people to be free from unreasonable searches and seizures by deterring police misconduct. *Cole v. State*, 878 N.E.2d 882, 887 (Ind.Ct.App.2007). If the evidence of cocaine in this case would have been suppressed, Hendricks would not have been required to decide whether to testify about it. Logic and sound policy considerations lead us to agree with the

majority view discussed by Professor La-Fave.

We conclude Hendricks did not waive his right to appeal the admissibility of the cocaine even though he testified to possession of it at trial. The issue warrants evaluation on its merits.

### II. Search and Seizure

■ Hendricks argues the search of his person and seizure of the cocaine were unreasonable under Article 1, Section 11 of the Indiana Constitution. We note that Hendricks does not argue there was a lack of probable cause for his arrest. It is also important to note that although Hendricks analyzes warrantless searches under the Fourth Amendment to the United States Constitution, his claim specifically argues his rights were violated under Article 1, Section 11 of the Indiana Constitution. Both constitutions have almost identical language. They provide:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

U.S. Const. Amend. IV, Ind. Const. Art. 1 § 11.

■ In other words, the Fourth Amendment and Article I, Section 11 protect an individual's privacy and possessory interests by prohibiting unreasonable searches and seizures. *Coleman v. State*, 847 N.E.2d 259, 262 (Ind.Ct.App.2006), *trans. denied*, Furthermore, "[w]hile the United States Constitution establishes a minimum level of protection to citizens of all states, a state is free as a matter of its own constitutional law to impose greater restrictions on police activity than those deemed minimal under federal law." *Mast*

*v. State*, 809 N.E.2d 415, 419 (Ind.Ct.App. 2004), *trans. denied.*

■ Our supreme court has imposed a different standard for reviewing alleged violations of the Indiana Constitution than as used under the United States Constitution. *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind.2005). The court held, "[t]he legality of a governmental search under the Indiana Constitution turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances." *Id.* Although there may be other relevant considerations under certain circumstances, generally the reasonableness of a search or seizure turns on a balancing of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs. *Id.* at 361. The ultimate decision of reasonableness in a constitutional challenge is a matter of law and is reviewed de novo. *See King v. State*, 877 N.E.2d 518, 522 (Ind.Ct.App.2007). We will affirm the trial court's ruling if it is sustainable on any legal grounds we find in the record. *Best v. State*, 821 N.E.2d 419, 423 (Ind.Ct.App. 2005), *trans. denied.*

Here, the search was reasonable. There was an extremely high degree of concern and suspicion that a violation occurred. Hendricks made two phone calls, both recorded, indicating he was in possession of cocaine and intended to sell it to Aynes upon his arrival. The police heard these phone calls prior to going into hiding at Aynes' home. Hendricks does not dispute that there was probable cause for his arrest. Upon our review of the recordings, there is substantial evidence that Hendricks possessed the cocaine with the intent to sell it upon arrival to Aynes' home.

The degree of intrusion the method of search and seizure imposed on Hendricks' ordinary activities was moderate. Hendricks was at Aynes' home in the midst of a drug deal. Aynes told Hendricks she was going into the other room to get the money to exchange for the cocaine. Hendricks agreed and waited for Aynes to return with the money he requested to complete the transaction. Meanwhile the officers came out of hiding. Because there was reason to believe that Hendricks was in possession of cocaine, the police searched Hendricks. They shook his clothing and nothing fell out, then they pulled his waistband out and saw a yellow napkin protruding from Hendricks' buttocks. The police pulled his pants down and removed the napkin, and inside the napkin was 41.25 grams of cocaine. Although we find the degree of intrusion to be moderate, we find there was a sufficient amount of evidence that Hendricks was in fact in possession of the cocaine, and the police officers had reasonable suspicion to perform the search. We see no reason to give a significant amount of weight to the fact that the police did not physically see the cocaine until they pulled out the waistband of Hendricks' pants.

Lastly, we look at the extent of law enforcement needs. The need for the search by law enforcement was obviously present here. For reasons previously stated, there was an abundant amount of evidence to believe Hendricks was in possession of cocaine. Hendricks was also in custody, so the police had a duty to search him for their own safety, the safety of others, and to prevent contraband from making its way into the local jail. Even though Officer Early testified he did not think Hendricks could have destroyed the drugs with the officers standing there, Hendricks could have dropped the cocaine along the way to the jail, or could have even brought it into the jail.

We agree that the area of one's buttocks would be considered private; however, in the totality of the circumstances here, we conclude pulling out Hendricks' waistband and subsequently removing the cocaine was reasonable.

### III. Police Statement

■■■■ Hendricks next contends that the trial court's admission of his statement to the police constitutes reversible error. We will not disturb the trial court's decision to admit a defendant's statement absent an abuse of discretion. *Giles v. State,* 760 N.E.2d 248, 249 (Ind.Ct.App.2002). "When considering the admissibility of a confession on appeal, we will uphold the finding of the trial court if there is substantial evidence of probative value to support it." *Id.*

■■■■ Hendricks asserts his statement was obtained in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He contends after he was read his *Miranda* rights he asserted his Fifth Amendment right to silence and right to counsel, but the police did not end the interrogation. "The purpose underlying Miranda warnings is to protect an individual's Fifth Amendment privilege against self-incrimination by placing reasonable limitations on police interrogations." *Sauerheber v. State,* 698 N.E.2d 796, 801 (Ind.1998). This privilege applies to custodial interrogations. *Id.* The following testimony took place after Hendricks was in custody and read his Miranda warnings:

[Officer]: You graduated, so you can read.

[Hendricks]: (the witness nods)

[Officer]: So you understand everything I just said to you, right?

[Officer]: Now you get to read that, and then I'll need your signature there.

[Hendricks]: So I can do this with an attorney or something?

[Officer]: What I just read to you is what you need to be concerned with. If you tell me you don't want to talk to me, I'll honor that, and I'll leave.

[Hendricks]: Yeah. I'm not saying nothing.

[Officer]: I just told you, if you don't want to talk to me, then I'll leave.

[Hendricks]: I know. I'm just saying— I'm just trying to go about what this paper is saying if we can do it in front of an attorney because—

[Officer]: That ain't what I said. It says you have the right to consult with an attorney and have an attorney present. I didn't say I was going to go get an attorney and bring an attorney in here. That's not what that said. What I am saying to you is, do you-you understand what I read to you. I'm giving you an opportunity to read it. If you agree with what this is saying, and you are going to talk to me about anything, you have to sign that. Other than that, I can't talk to you.

[Hendricks]: I just—

[Officer]: I can't talk to you. Before we discuss anything, that has to be signed.

[Hendricks]: (The witness signs the waiver).

Tr. pp. 3–4. Hendricks evidenced his right to silence and his desire to have an attorney present.

▇▇▇ When a suspect asserts the right to counsel during custodial questioning, the police must stop the interrogation until counsel is present or the suspect reinitiates communication with police and voluntarily waives the right to counsel. *See Alford v. State,* 699 N.E.2d 247, 249–50 (Ind.1998). Additionally, after the Fifth Amendment right to counsel is invoked, a waiver in response to police-initiated interrogation is not sufficiently voluntary to meet that amendment's mandate. *Storey v. State,* 830 N.E.2d 1011, 1017 (Ind.Ct. App.2005). Hendricks signed the waiver in response to the officer's statements, after he invoked his right to silence and to counsel; therefore, the questioning was impermissible police initiated interrogation. *See id.* Hendricks had the right to counsel, and he had the right to have counsel appointed to him if he could not afford an attorney. *See Miranda,* 384 U.S. 436 at 444, 86 S.Ct. at 1612. We conclude the trial court abused its discretion when it admitted the police statement into evidence at trial.

▇▇▇ That being said, statements obtained in violation of the federal constitution and erroneously admitted are subject to harmless error analysis. *Finney v. State,* 786 N.E.2d 764, 768 (Ind.Ct.App. 2003). A federal constitutional error is reviewed de novo and must be harmless beyond a reasonable doubt. *Id.*

The State bears the burden of demonstrating that the improper admission of a defendant's statement did not contribute to the conviction. To say that an error did not contribute to the verdict is ... to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record. If the State has presented other overwhelming evidence of the defendant's guilt, then an erroneously admitted statement may be deemed harmless.

*Id.* (citations and quotations omitted).

Notwithstanding the police statement, we find there is overwhelming evidence that supports Hendricks' conviction. Hendricks was recorded twice during phone conversations with Aynes. In the first recorded phone conversation Hendricks agreed to sell Aynes 1.5 ounces of cocaine for sixteen hundred dollars. In the second

recorded phone conversation, Hendricks indicated he had the cocaine in his possession, and he was in route with the intent to deliver cocaine to Aynes' house. When the officers hiding in Aynes' home searched Hendricks, they found 41.25 grams of cocaine on his person, well beyond what was necessary for a Class A felony dealing in cocaine conviction.

We find the statement made by Hendricks to the police was unnecessary for his conviction, and the admission of it by the trial court was harmless beyond a reasonable doubt.

### Conclusion

Hendricks did not waive his right to appeal the admission of cocaine found on his person at trial; however, the search of his person and the seizure of the cocaine were proper. Although the admission of the statement made to police by Hendricks constituted error, the error was harmless beyond a reasonable doubt. We affirm Hendricks' conviction.

Affirmed.

FRIEDLANDER, J., and DARDEN, J., concur.