## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 15 2016, 8:43 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Oliver Furnell Clemmons,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

July 15, 2016

Court of Appeals Case No.
36A01-1512-CR-2226

Appeal from the Jackson Circuit Court

The Honorable Richard W. Poynter, Judge

Trial Court Cause No.
36C01-1403-FA-8

**Crone, Judge.**

# Case Summary

[1] Oliver Furnell Clemmons appeals his convictions for class A felony dealing in a narcotic drug and class A misdemeanor marijuana possession. He challenges the trial court's denial of his motion to suppress and subsequent admission of evidence that he claims was seized in violation of the Fourth Amendment to the U.S. Constitution and Article 1, Section 11 of the Indiana Constitution. He also challenges the sufficiency of the evidence to support his convictions. Finding that Clemmons was not subjected to an unlawful search and that the evidence is sufficient to support his convictions, we affirm.

# Facts and Procedural History

[2] On March 22, 2014, Indiana State Trooper Matthew Holley was patrolling traffic on Interstate 65 in Jackson County when he observed a 1997 Infiniti sedan with an Alabama license plate following less than one car length behind an SUV. Trooper Holley pulled onto the interstate and followed the Infiniti, noting that it had passed the SUV and was traveling faster than the posted seventy-miles-per-hour speed limit. The officer initiated a traffic stop, exited his patrol car, and approached the Infiniti. He noticed that the driver, Clemmons, appeared unusually nervous and fidgety and had several items sitting on his lap. Clemmons gave the officer an identification card and also provided the vehicle registration, which the officer had not requested. Clemmons spoke fast, blurting out that his driver's license had been suspended and that he was on his way to Alabama.

[3] Trooper Holley returned to his patrol car and ran a check on Clemmons's information and the information on the license plate. He verified Clemmons's license suspension and found that the vehicle was registered to Clemmons's father. During this process, the officer observed an unusual amount of movement by Clemmons inside his vehicle. Concluding that "something was not right" and "[Clemmons] was not normal," the officer called for backup, knowing that he would have to get Clemmons out of the vehicle due to his suspended license. Tr. at 21.

[4] As Trooper Holley approached the vehicle for the second time, he saw Clemmons hanging his arms out the driver's side window. *Id.* at 18-21. He notified Clemmons that although he could arrest him for driving while suspended, he would instead issue him a citation and drive him to a nearby restaurant to arrange his own transportation. The officer also arranged for the Infiniti to be towed from the side of the interstate.

[5] Trooper Holley ordered Clemmons to exit the Infiniti to be patted down for weapons as a safety precaution before entering the patrol car. As Clemmons exited, the officer was startled by a "small explosion sound," which turned out to be Clemmons's lighter exploding as it hit the ground. *Id.* at 27. During the patdown, the officer felt a large, hard object beneath Clemmons's testicles that he knew was not a body part. He inquired about it, and Clemmons said that it was marijuana. Trooper Holley handcuffed Clemmons, put on gloves, and performed a more thorough search, during which Clemmons volunteered that he was a heroin addict and that the hard object also contained heroin. The

officer retrieved the fist-sized, egg-shaped object from underneath Clemmons's testicles and found it to consist of two airtight vacuum bags taped together, one containing heroin and the other marijuana.

[6] Trooper Holley also discovered a heat-sealed package of white powder under the driver's seat of the Infiniti.[1] Clemmons told him that the powder was a cutting agent. The officer also found loose inner door panels and a missing back cover on the front passenger's seat. Subsequent laboratory tests showed that the seized packages contained ten grams of heroin, 27.74 grams of marijuana, and 132.95 grams of the cutting agent.

[7] The State charged Clemmons with class A felony dealing in a narcotic drug, class C felony possession of a narcotic drug, and class A misdemeanor possession of marijuana. The parties stipulated to the chain of custody of the seized packages. Clemmons filed a pretrial motion to suppress the evidence seized during the traffic stop. The trial court held a hearing immediately before the start of Clemmons's bench trial and denied the motion. The court incorporated the testimony from the hearing into the bench trial record, and the seized contraband was admitted over Clemmons's objection. The trial court found Clemmons guilty as charged and entered judgment on class A felony dealing in a narcotic drug and class A misdemeanor marijuana possession.

---

[1] Clemmons suggests that the search of the Infiniti was illegal but fails to present cogent argument on this point as required by Indiana Appellate Rule 46(A)(8).

Clemmons now appeals. Additional facts will be provided as necessary.

# Discussion and Decision

Because Clemmons appeals the denial of his motion to suppress evidence eventually admitted during his bench trial, the issue is more accurately framed as a request to review the trial court's ruling on its admissibility. *Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014). We review a trial court's rulings on admissibility of evidence for an abuse of discretion. *Id*. An abuse of discretion occurs where the trial court's ruling is clearly against the logic and effect of the facts and circumstances before it and the error affects a party's substantial rights. *Id*. However, where the issue concerns the constitutionality of the search and seizure of the evidence, it presents a question of law, which we review de novo. *Id*. at 40-41.

## Section 1 – Police did not violate Clemmons's Fourth Amendment rights.

Clemmons asserts that the drugs were seized pursuant to an unconstitutional search under the Fourth Amendment to the United States Constitution, which guarantees "[t]he right of the people to be secure in their persons … against unreasonable searches and seizures." The Fourth Amendment's safeguards "extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *L.W. v. State*, 926 N.E.2d 52, 55 (Ind. Ct. App. 2010). The stop involved in this case was an investigatory or "*Terry* stop," based on *Terry v. Ohio*, 392 U.S. 1 (1968). In conducting a *Terry* stop, "a police officer may

briefly detain a person for investigatory purposes without a warrant or probable cause if, based upon specific and articulable facts together with rational inferences from those facts, the official intrusion is reasonably warranted and the officer has a reasonable suspicion that criminal activity 'may be afoot.'" *L.W.*, 926 N.E.2d at 55 (quoting *Terry*, 392 U.S. at 21-22).

> The "reasonable suspicion" requirement for a *Terry* stop is satisfied when the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has occurred or is about to occur. Reasonable suspicion entails something more than an inchoate and unparticularized suspicion or hunch, but considerably something less than proof of wrongdoing by a preponderance of the evidence.

*Rich v. State*, 864 N.E.2d 1130, 1132 (Ind. Ct. App. 2007).

[11] Reasonable suspicion sufficient to justify an investigatory stop is also less demanding than a showing of probable cause. *Ertel v. State*, 928 N.E.2d 261, 264 (Ind. Ct. App. 2010), *trans. denied*. If the facts known by the police at the time of the investigatory stop are such that a person of reasonable caution would believe the action taken was appropriate, the Fourth Amendment is satisfied. *Rich*, 864 N.E.2d at 1132. "If a police officer has a reasonable fear of danger when making a *Terry* stop, he may conduct a carefully limited search of the suspect's outer clothing in an attempt to discover weapons that might be used to assault him." *Granados v. State*, 749 N.E.2d 1210, 1213 (Ind. Ct. App. 2001), *trans. denied*.

> [I]n a traffic-stop setting, the first *Terry* condition—a lawful investigatory stop—is met whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation. The police need not have, in addition, cause to believe any occupant of the vehicle is involved in criminal activity. To justify a patdown of the driver or a passenger during a traffic stop, however, just as in the case of a pedestrian reasonably suspected of criminal activity, the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous.

*Arizona v. Johnson*, 555 U.S. 323, 327 (2009). "An officer's inquiries into matters unrelated to the justification for the traffic stop … do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Id.* at 333.

[12] During his first exchange with Clemmons and subsequent verification, Trooper Holley became aware that Clemmons was driving on a suspended license, an offense for which he could have arrested him and conducted a search incident to arrest. Having decided to cite Clemmons and drive him to a safer location, he would need to ensure his own safety. Add to this circumstance the fact that he was troubled by Clemmons's gestures and movement, stuttering, blurting out information, and unusual placement of items in his lap. *See, e.g.*, Tr. at 13-14 ("[I]t looked like someone grabbed into their center console and set stuff in their lap.").

[13] Clemmons characterizes this nervous conduct as typical of most drivers during a traffic stop. Yet, Trooper Holley, having conducted approximately 150 traffic

stops per month for the preceding nine years, was well acquainted with the usual nervousness exhibited by a driver during a traffic stop. He testified, "[S]omething was not right in the vehicle … I knew I had to get him out of that vehicle because he was suspended … I already felt that he was not normal and something's wrong, so I asked another trooper to come and assist in case there was a problem." *Id*. at 21.

[14]   Clemmons also characterizes Trooper Holley's decision to transport him as mere pretext and asserts that the officer should have allowed him to call for a ride and then left him at the sight of the traffic stop to be picked up. In other words, he challenges not only Trooper Holley's credibility but also his reasonableness under the circumstances.

[15]   In *Wilson v. State*, our supreme court addressed the reasonableness of an officer's decision to pat down a driver initially stopped for speeding but suspected of intoxication before placing him in his patrol car to administer a sobriety test. 745 N.E.2d 789, 792-93 (Ind. 2001). There, the patdown produced a handgun for which Wilson did not have a license. *Id*. Our supreme court held that the patdown violated Wilson's rights because the officer had neither a particularized suspicion nor a reasonably necessary basis for placing him in the patrol car to administer the sobriety test. *Id*. However, the *Wilson* court was careful to emphasize the risks attendant to placing a defendant inside a patrol car and to envision circumstances where it would be reasonably necessary for police to place a detained person in the vehicle:

When an officer places a person into a patrol car that will be occupied by the officer or other persons, there is a significantly heightened risk of substantial danger to those in the car in the event the detainee is armed …. [I]t is generally reasonable for a prudent officer to pat-down persons placed in his patrol car, even absent a belief of dangerousness particularized to the specific detainee.

*Id*. at 792.

[16] We find the holding in *Wilson* distinguishable. There, Wilson had not exhibited any furtive movements or behavior, and the officer testified that he had a personal practice of patting down any person that he intended to place in his patrol car. *Id*. at 791. However, the officer did not establish why he chose to place Wilson in his patrol car to conduct a sobriety test that could have been administered with Wilson remaining in his own vehicle, thus obviating the need for a patdown altogether. *Id*. at 793.

[17] In contrast, here, Trooper Holley's choices were: arrest Clemmons for driving on a suspended license, which would result in a patdown incident to arrest; issue a citation and pat him down before driving him to a safer location; or issue a citation and leave him on the side of the interstate with a vehicle that he had driven illegally, pending the arrival of the tow truck, all the while not knowing whether Clemmons had a spare key or another means of starting the vehicle and driving off. Safety concerns not only for Trooper Holley and Clemmons but also for other drivers on the interstate necessitated Clemmons's transport away from the scene.

Simply put, the fact that Trooper Holley chose not to arrest Clemmons for driving while suspended does not erase his probable cause to do so. Even having decided to cite rather than to so arrest Clemmons, the officer's safety concerns based on Clemmons's furtive gestures and other abnormal conduct were sufficient to justify the patdown and seizure of the drugs. Thus, Clemmons was not denied his protections under the Fourth Amendment.[2]

## Section 2 – Police did not violate Clemmons's rights under the Indiana Constitution.

Clemmons raises a similar claim of unlawful search and seizure based on Article 1, Section 11 of the Indiana Constitution, which states in pertinent part, "The right of the people to be secure in their persons … against unreasonable search or seizure, shall not be violated." While the language tracks that of the Fourth Amendment, Indiana's search and seizure clause is subject to a different analysis, that is, we evaluate the reasonableness of the police conduct under the

---

[2] Without raising it as a separate issue, Clemmons interjects a Fifth Amendment claim concerning his admissions made at the scene. Appellant's Br. at 24. A person who is in custody and subjected to police interrogation must be read his *Miranda* warnings, which include the right to remain silent and the right to counsel. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Many of Clemmons's statements were blurted out, and only one was an answer to a direct question. *See* Tr. at 68, 72 (Clemmons responding to officer's question that object found under his testicles during patdown was marijuana, with officer explaining that he would have seized the object no matter what Clemmons said it was and that it was possible that the object was a holster). Even if the trial court had abused its discretion in admitting his statements on Fifth Amendment grounds, statements obtained in violation of the Constitution are subject to a harmless error analysis. *Hendricks v. State*, 897 N.E.2d 1208, 1215 (Ind. Ct. App. 2008). "If the State has presented other overwhelming evidence of the defendant's guilt, then an erroneously admitted statement may be deemed harmless." *Id.* (quoting *Finney v. State*, 786 N.E.2d 764, 768 (Ind. Ct. App. 2003)). The record contains overwhelming independent evidence of Clemmons's guilt, and based on our holding that Clemmons's constitutional protections against unlawful search and seizure were not violated by the patdown which produced the large vacuum-sealed package of drugs, as well as the lab test results verifying the presence and quantity of the drugs, we conclude that any error in admitting his statements was harmless.

"totality of the circumstances." *Litchfield v. State*, 824 N.E.2d 356, 359-60 (Ind. 2005). Subject to other relevant considerations under the circumstances, the reasonableness of a search or seizure turns on a balance of: "(1) the degree of concern, suspicion, or knowledge that a violation has occurred, (2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and (3) the extent of law enforcement needs." *Id*. at 361. The State bears the burden of establishing that, in the totality of the circumstances, the intrusion was reasonable. *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind. 2001).

> A police stop and brief detention of a motorist is reasonable and permitted under Section 11 if the officer reasonably suspects that the motorist is engaged in, or about to engage in, illegal activity. Reasonable suspicion exists if the facts known to the officer, together with the reasonable inferences arising therefrom, would cause an ordinarily prudent person to believe that criminal activity has or is about to occur.

*Id.* at 786-787 (citations omitted). "[R]easonableness under the totality of circumstances may include consideration of police officer safety." *Saffold v. State*, 938 N.E.2d 837, 840 (Ind. Ct. App. 2010), *trans. denied* (2011).

[20] The totality of the circumstances shows the following: (1) an initial stop based on Trooper Holley's observations of Clemmons speeding and following too close; (2) a high degree of suspicion based on Clemmons's unusual gestures and movements, stuttering and blurting out information, and other behavior during the traffic stop; (3) actual knowledge of Clemmons's criminal activity, that is, driving on a suspended license; (4) a high degree of concern that Clemmons

might drive away in the vehicle during the stop; (5) the necessity of removing Clemmons from the vehicle that he had been driving illegally; (6) the necessity of removing both Clemmons and the vehicle from the side of the interstate, which meant towing the vehicle and transporting Clemmons in the patrol car; (7) a relatively low level of intrusion of patting down Clemmons outside his clothing; (8) the discovery of a large, hard object underneath Clemmons's testicles during the patdown, which Clemmons said was marijuana, precipitating the handcuffing and more thorough search of his person; (9) Clemmons's blurting out that the seized object also contained heroin; and (10) the need for law enforcement safety while transporting Clemmons to a safe location.

[21] Clemmons's conduct and suspended status created the circumstances that escalated a simple traffic stop to one involving the search and seizure of the contraband. The totality of the circumstances supports Trooper Holley's search of Clemmons and the vehicle, and as such, his actions did not violate Clemmons's rights under the Indiana Constitution.

## Section 3 – The evidence is sufficient to support Clemmons's convictions.

[22] Finally, Clemmons maintains that the evidence is insufficient to support his convictions. When reviewing a challenge to the sufficiency of evidence, we neither reweigh evidence nor judge witness credibility. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). Rather, we consider only the evidence and reasonable inferences most favorable to the judgment and will affirm the

conviction "unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id*. It is therefore not necessary that the evidence "overcome every reasonable hypothesis of innocence." *Id*.

[23] The trial court entered judgment of conviction against Clemmons for class A felony dealing in a narcotic drug and class A misdemeanor marijuana possession. *See* Ind. Code § 35-48-4-1 ("A person who … possesses, with intent to … deliver … a narcotic drug, pure or adulterated, classified in schedule I or II … commits dealing in … a narcotic drug … a Class A felony if … the amount of the drug involved weighs three (3) grams or more"); *see also* Ind. Code § 35-48-4-11 ("A person who … knowingly or intentionally possess (pure or adulterated) marijuana … commits possession of marijuana … a Class A misdemeanor.").[3]

[24] First, to the extent that Clemmons predicates his sufficiency challenge on the alleged inadmissibility of the contraband seized during the traffic stop, his argument lacks merit, as discussed in Sections 1 and 2. As such, we address his argument with the evidence as properly admitted, under which circumstances he limits his challenge to his conviction for class A felony dealing in a narcotic.

[25] Clemmons maintains that the State failed to prove that he intended to deliver the heroin found on his person. He claims that he was a user who intended to

---

[3] These statutes were revised effective July 1, 2014. However, we cite the versions of the statutes in effect on the date of Clemmons's offenses.

snort the heroin himself. The laboratory test results show that Clemmons possessed ten grams of heroin, well above the three-gram threshold for class A felony possession with intent to deliver. "Possession of a substantial amount of narcotics constitutes circumstantial evidence of intent to deliver, and if the quantity is such that it could not be personally consumed or used, then an inference of a predisposition to sell can reasonably be drawn." *Hape v. State*, 903 N.E.2d 977, 997-98 (Ind. Ct. App. 2009) (citation and internal quotation marks omitted), *trans. denied*.[4]

[26] In addition to the heroin and marijuana found on Clemmons's person, police discovered 132.95 grams of a cutting agent underneath the driver's seat of the vehicle that Clemmons was driving. Drug interdiction officer Randall Miller testified that traffickers add cutting agents to the drugs to maximize their profits and that those who use without also dealing would already have the cutting agent mixed in with the drug. He also testified as to other hallmarks of trafficking: driving a vehicle owned by a third party; driving a vehicle with loose panels for concealment of bulk narcotics; driving long distances without luggage; the absence of paraphernalia indicative of personal use; and packaging the drugs in large, sealed, airtight packages as opposed to quarter to half-gram bindles of heroin wrapped in foil, a baggie, or a balloon. All of these apply in this case. Clemmons drove his father's vehicle and said that he was traveling to

---

[4] In *Hape*, the total quantity of methamphetamine recovered during the search was 8.26 grams. 903 N.E.2d at 985.

Alabama when he was stopped. Police found no luggage or user paraphernalia in the vehicle. They did find loose panels and a torn cover on the back of one of the seats. The large package of drugs found underneath Clemmons's testicles consisted of two airtight, vacuum-sealed bags, one containing ten grams of heroin and the other containing 27.74 grams of marijuana.

[27] Moreover, the jail commander and the jail nurse testified concerning their experience in dealing with sweaty, shaky, fatigued heroin addicts experiencing withdrawal symptoms while incarcerated. Both reported that Clemmons appeared robust, had no needle marks, and showed no signs of withdrawal during his incarceration. To the extent that Clemmons challenges their testimony on the basis of his assertions to Trooper Holley that he snorted rather than injected heroin, this matter goes to the weight of the evidence and credibility of witnesses. The same may be said about his arguments concerning the obvious looseness of the door panels and the absence of plastic bags, scales, and other indicia of dealing. In short, he invites us to reweigh evidence and reassess witness credibility, which we may not do. Probative, properly admitted evidence supports the trial court's conclusion that he intended to deliver the heroin. Based on the foregoing, we conclude that the evidence most favorable to the judgment is sufficient to support Clemmons's convictions. Accordingly, we affirm.

[28] Affirmed.

Najam, J., and Robb, J., concur.