# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 11 2018, 10:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher L. Clerc
Columbus, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Assistant Section Chief for
Criminal Appeals
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Edwin A. Castro,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

December 11, 2018

Court of Appeals Case No.
18A-CR-502

Appeal from the Bartholomew
Superior Court

The Honorable James D. Worton,
Judge

Trial Court Cause No.
03D01-1603-F6-1700

**Crone, Judge.**

## Case Summary

Edwin A. Castro appeals his convictions for level 6 felony domestic battery, level 6 felony strangulation, level 6 felony criminal confinement, and level 6 felony battery on a person less than fourteen years old. Castro, who was born in Honduras, asserts that the trial court erred in admitting his recorded statement to police by declining to conduct a suppression hearing on whether he knowingly and voluntarily waived his *Miranda* rights, which had been read to him in English rather than Spanish. We conclude that if there was any error in admitting the recorded statement, that error was harmless beyond a reasonable doubt. Therefore, we affirm.

## Facts and Procedural History

On March 18, 2016, Castro's ex-wife Rosa Serrano Diaz went to work with the understanding that Castro was going to watch their children. Diaz had previously obtained a protective order against Castro. When Diaz returned home, she found Castro in the guest room and asked him to leave because of the protective order. He refused, and they got into an argument about child support. When Diaz attempted to give Castro the child support documents, he threw them aside. She asked him again to leave, and he again refused. She tried to go to the children's room, but Castro would not let her pass. Castro hit her and pushed her against a wall. She fell backwards and landed in a laundry basket. Diaz got up and said, "[P]lease leave, if you are going to start again, please leave." Tr. Vol. 2 at 76. Diaz tried to move away, but Castro pushed her down three times. Diaz begged him to leave, but Castro was "furious." *Id*.

at 78.  He grabbed her by the hair, threw her against the wall, and put both his hands on her neck.  Diaz pleaded with him to let her go and tried to fight back.  She tried hitting him with her knee and her fist and scratched him, but she could not get away.  When she felt like she was unable to breathe any more, she yelled for their son ("Son").  Son responded and started hitting Castro on the head and telling him "let go of mommy."  *Id*. at 85.  Diaz's daughter ("Daughter") also arrived and started "begging" Castro to let her mother go or she would call the police.  *Id*. at 86.  Castro kept one hand on Diaz and used his other hand to grab Son and throw him.  Son landed on the bed, rolled off, and hit the closet door.  Diaz kept fighting Castro, scratching and hitting him without success.  Daughter continued to beg Castro to let her mother go, to no avail, and Daughter ultimately called the police.  Castro then threw Diaz out of his way and ran out of the home.

[3]     Columbus Police Officer Angela Owens responded to a domestic disturbance report and was advised that the male party had left the scene of the disturbance.  Officer Owens went to the address where the male party had reportedly gone and encountered Castro, who had red marks on his face and blood on his lip.  Officer Owens placed Castro under arrest for battery and violation of the protective order.  Officer Owens read him his *Miranda* rights in English.  She asked him if he understood his rights, and he replied affirmatively.  *Id*. at 220; State's Ex. 27.  She asked him if he wished to speak with her, and he said yes.  Tr. Vol. 2 at 221; State's Ex. 27.  Officer Owens recorded their conversation, during which Castro explained in English that Diaz had attacked and injured

him and that he had not touched her or the children.  Tr. Vol. 2 at 225-28; State's Ex. 27.  When this conversation took place, Castro had been in the United States for approximately nine years.[1]

[4] The State charged Castro with level 6 felony domestic battery, level 6 felony strangulation, level 6 felony criminal confinement, and level 6 felony battery on a person less than fourteen years old.  At Castro's jury trial, the State sought to admit Castro's recorded statement as State's Exhibit 27.  Defense counsel requested that a foundation be laid to establish that Castro understood his *Miranda* rights.  Officer Owens testified that she read a full *Miranda* advisement in English from a card she had in her pocket.  She also testified that she carried a card with the *Miranda* rights in Spanish, but she chose to read them in English because Castro had been communicating with her in English and she believed that he knew English.  Tr. Vol. 2 at 215-16.  She further testified that she believed that Castro understood her when she advised him of his *Miranda* rights and that she had asked him if he understood his rights and he indicated that he did.  *Id*. at 217.  Officer Owens also testified that she asked Castro if he wished to speak with her and he indicated that he did.  *Id*. at 218.  Defense counsel requested that the trial court conduct a suppression hearing.  The trial court denied the request, and the recording was played for the jury.  Tr. Vol. 2 at 225-28; State's Ex. 27.

---

[1] At his sentencing hearing in February 2018, Castro testified that he had been in the United States for eleven years.  Tr. Vol. 3 at 151.

[5]     In closing argument, defense counsel made the following statements:

> [I]f … Castro was the aggressor [Diaz] would have been hurt.
> She would have been in worse shape than she was, because he's a
> man, supposedly according to her she is so scared of him, so
> fearful of him, but he is so much stronger than she is, you saw
> that lie, well look at her injuries versus his. He's bleeding, when
> Police arrive and take pictures of him, he's crying, he's crying
> because he's just been abused, it just happened.
>
> ….
>
> [Castro] is not the aggressor, [Castro] is trying to escape the, the
> room and she is blocking every exit. He doesn't testify today, for
> a reason, it's his right. You are going to get an instruction that
> says, you cannot hold that against him, as jurors, I know I would
> too, he didn't talk, he must be hiding something. He doesn't
> have to talk, he's the one who is being accused, in fact, it is a
> right not to talk. In fact, he did talk, he talked on a recording
> when it happened fresh that day. And he decided he was going
> to rest on that, that's enough, I am not going to do this, I don't
> need, he doesn't need to subject himself to the interrogation of
> the Prosecutor, who is going to try and tear him apart. He is on
> trial, when maybe in fact [Diaz] should be the one.
>
> ….
>
> You will get an instruction, you can't hold it against [Castro] that
> he didn't testify, but he did, he testified to that Police Officer that
> showed up. And he is the most creditable person, so far, that
> we've heard from, in that video, in that audio.

Tr. Vol. 3 at 81, 90-91, 99.

[6] The jury found Castro guilty as charged. The trial court sentenced Castro to a four-year aggregate term. This appeal ensued.

## Discussion and Decision

[7] Castro challenges the admission of his recorded statement in the absence of a suppression hearing on whether he knowingly and voluntarily waived his *Miranda* rights. Statements made by those in police custody in response to police interrogation are inadmissible at trial unless the State proves beyond a reasonable doubt that the defendant knowingly and voluntarily waived his privilege against self-incrimination and his right to counsel and that the statements themselves were voluntarily given. *Johnson v. State*, 584 N.E.2d 1092, 1098-99 (Ind. 1992) (citations omitted), *cert. denied*. We review a trial court's decision to admit a defendant's custodial statement for an abuse of discretion. *Horan v. State*, 682 N.E.2d 502, 509 (Ind. 1997).

[8] However, we need not address whether any error occurred in admitting the recording because if any error occurred it was harmless. "Statements obtained in violation of *Miranda* and erroneously admitted are subject to harmless error analysis." *Alford v. State*, 699 N.E.2d 247, 251 (Ind. 1998).

> A federal constitutional error is reviewed de novo and must be harmless beyond a reasonable doubt. The State bears the burden of demonstrating that the improper admission of a defendant's statement did not contribute to the conviction. To say that an error did not contribute to the verdict is ... to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record. If the State has presented other overwhelming evidence of the defendant's guilt,

> then an erroneously admitted statement may be deemed harmless.

*Finney v. State*, 786 N.E.2d 764, 768 (Ind. Ct. App. 2003) (citations and quotations omitted).

[9] In his recorded statement, Castro did not say anything inculpatory, but rather asserted that his ex-wife was the aggressor and consistently denied touching her or his children. Moreover, in closing argument, defense counsel relied on the recording to advocate for Castro's innocence and to argue that his version of events was the most credible. Accordingly, we have no difficulty concluding that the recording did not contribute to the guilty verdicts and was harmless beyond a reasonable doubt. Therefore, we affirm Castro's convictions.

[10] Affirmed.

Najam, J., and Pyle, J., concur.